In the matter of the attachment against the estate of EZRA J. COATES and JOHN HILLARD, non-resident debtors.

Where an attachment is issued in this state against the estate of non-resident debtors, all the creditors, whether *resident* or *non-resident*, are entitled to participate in the assets which may come to the hands of the trustees, for distribution.

But in adjusting the dividends, due regard is to be had to any assignment which may have been made by the debtors under a foreign bankrupt law; so that no creditor, whether here or abroad, shall receive more than his equal proportionate share of the entire estate of the debtors, wherever it may be.

THIS was an appeal from an order made at a special term. The matter came before the special term upon the petition of David Evans, ·of London, warehouseman, transacting business under the name and firm of David Evans & Co. The petition alledged that on the 16th day of December, 1847, an attachment, pursuant to the statute in such case made and provided, was issued against the estate of Ezra Jenks Coates and John Hillard, non-resident debtors, by his Honor Hiram Gray, a justice of this court, upon the application of Jennison A. Leland and James K. Ennis, of the city of New-York, creditors of said Ezra Jenks Coates and John Hillard; and on the same day, the no-

tice required by the act was, in conformity to said act, and pursuant to the order of said justice, duly published. That, within three months after the expiration of the time limited in the said notice for the appearance of said debtors, the said attachment not having been discharged, the said justice did, pursuant to the aforesaid act, and on the 9th day of October, 1848, nominate and appoint S. P. Nash, Waldo Hutchings and Marshal Lefferts, all of the city of New-York, trustees for all the creditors of said Ezra Jenks Coates and John Hillard, who duly qualified as such trustees. That, subsequently, and within twenty days after the appointment of said trustees, the said justice, who issued the attachment, made a report to this court of all the proceedings had before or done by him in the above entitled matter, and filed the same with the clerk of this court, in the county of New-York, pursuant to the act in such case made and provided; that the said trustees, after their appointment, and on or about the third day of November, 1848, caused a notice to be published pursuant to the act in such case made and provided, requiring, among other things, all the creditors of said Ezra Jenks Coates and John Hillard to deliver their respective accounts and demands to the said trustees, or one of them, at the office of Waldo Hutchings, Esq. one of said trustees at number 40 Wall-street, in the city of New-York, on or before the 20th day of December, 1848. That at the time of the issuing of the attachment, and of the publication of the notice aforesaid, the said Coates and Hillard were residents of England, transacting business there under the firm names of Coates & Co., and Coates, Hillard and company. On the 16th day of December, 1847, and previously thereto, the said Ezra Jenks Coates and John Hillard were justly indebted to the petitioner in the sum of fourteen hundred and seventy-seven pounds and seventeen shillings sterling, exclusive of interest ; that on the 27th day of December, 1847, a fiat in bankruptcy was issued in England against said Coates and Hillard, under which they were on the 28th day of December, 1847, duly declared bankrupts, by one of the commissioners of the court of bankruptcy in Great Britain. That on the last mentioned day, Her-

bert Harris Cannan, Esq. of London, was duly appointed by one of the commissioners of said court of bankruptcy, official assignee of the estate of the said Coates and Hillard, and that on the 13th day of January, 1848, John Dillon, Richard Twentyman, Henry Tucker, and Henry Browett, were appointed by the said court creditor's assignees of the estate of said Coates and Hillard; that on the 27th day of May, 1848, a certificate of discharge, pursuant to the English statutes concerning bankrupts, was granted by the commissioners of the aforesaid court of bankruptcy, in England, to the said Ezra Jenks Coates and John Hillard. That the petitioner proved his said debt according to the provisions of the English bankrupt laws, before the said commissioners, against the said Coates and Hillard, and that he had received a dividend of one shilling in the pound on the amount of his aforesaid debt, from the estate of the said bankrupts, in England, and that there would probably be an additional dividend, of not to exceed six pence in the pound, from the estate of said bankrupts in England. That several creditors of the said Coates and Hillard, residents of the United States, and of the state of New-York, had proved their claims and received dividends under the aforesaid commission in bankruptcy, issued against the said Coates and Hillard, in England. That other creditors of the said Coates and Hillard, who are residents of the state of New-York, or of other of the United States, whose claims amounted to about *forty thousand dollars*, and who had not proved their claims under the said commission, and who had received no dividend, had presented their claims to the trustees appointed under the attachment proceedings in this state, and that other creditors of said Coates and Hillard, who are residents of Great Britain, and who had proved their claims under the commission in bankruptcy, in England, and received the aforesaid dividend, had also presented their claims to the trustees appointed under the attachment proceedings in this state, for a dividend from the funds in their hands, which said claims amounted to upwards of one hundred thousand dollars, including the petitioner's. That pursuant to the notice published by the trustees, appointed under the attachment issued in the state of New-York, the peti-

In the matter of Coates.

tioner's claim for the debt so due to him by said Coates and Hillard, amounting, after deducting the dividend received by him, as aforesaid, to the sum of fourteen hundred and three pounds nineteen shillings and two pence, sterling, ($6795,16,) was duly presented to the said trustees on the 2d day of Dec., 1848. That the said trustees, pursuant to the act in such case made and provided, did, within fifteen months from the time of their appointemnt, call a general meeting of the creditors of the said Coates and Hillard, at the office of Messrs. Mann & Rodman, in the city of New-York, on the 10th day of December, 1849, at which meeting it appeared that the said trustees had collected of the assets of the estate of said Coates and Hillard, the sum of $6383,47, and at which meeting the said trustees decided to reject the claim of the petitioner to a dividend from the assets in the hands of said trustees, on the ground that the aforesaid discharge in bankruptcy, in England, of the said Coates and Hillard, and the proof of the petitioner's debt there, and the receipt by him of a dividend from the assets collected under the aforesaid commission in bankruptcy, in England, discharged the debt so due to him, so that he could claim no share in the assets collected under the proceedings upon the attachment issued in New-York; the said trustees at the same time admitting that at the date of the issuing of the first warrant of attachment in the proceedings wherein they were appointed trustees, as aforesaid the said sum of fourteen hundred and seventy-seven pounds seventeen shillings sterling, was justly due to the petitioner by the said Coates and Hillard. That the petitioner gave notice to said trustees of his intention to apply to this court for their directions to said trustees in this matter, and for an order to them to admit the petitioner to share in the dividends of the assets of the estate of said Coates and Hillard, collected by them, and that the said trustees thereupon adjourned to a future day the said meeting of creditors, without declaring any dividend among the creditors of said Coates and Hillard, to await the decision of this court. The petitioner therefore prayed the aid of this court in this matter, and that an order might be made directing

the said S. P. Nash, Waldo Hutchings, and Marshall Lefferts, to admit the petitioner to share in proportion to his debt so due him, in the distribution of the assets of said Coates and Hillard, so collected by them, or which may hereafter come into their hands, and to pay him out of such assets a dividend or dividends ratably with other creditors of said Coates and Hillard, entitled to share in the distribution of said assets, or for such other order, or further order, in the premises, as might be just.

The judge holding the special term denied the prayer of the petition, and the petitioner appealed to the general term.

*Weeks & DeForest*, for the petitioner.

*Mann & Rodman*, for the trustees.

*By the Court*, ROOSEVELT, J. Is the foreign creditor, in case of a non-resident debtor attachment, entitled to a dividend? The judge at special term, although with some hesitation, held that he was not. From that decision an appeal is taken to the general term.

The trustees contend that, as the proceeding by attachment is a statutory remedy, and as the statute expressly limits the right of *instituting* it to the resident creditor, (unless the non-resident's claim originated here,) and contains no express provision entitling the foreign creditor afterwards to come in and share in the distribution of the assets, the foreigner cannot be admitted; and that the exclusion, thus inferred, is in accordance with the general policy of our laws, by which, it is said, foreign assets within the jurisdiction of our courts, are always reserved for the exclusive benefit of domestic creditors.

The latter branch of the proposition, as I shall presently show, is not true in point of fact—and the former would seem to be felo de se. It first assumes that the language of the statute is to be the sole guide; and then, when that language fails to make the exception contended for, seeks to supply the omission by a forced inference.

The statute in express terms, (so at least the counsel contend,)

In the matter of Coates.

excludes the non-resident from becoming an attaching creditor in fact: and does not the same statute, in equally and more express terms, declare that "*any other creditor*," that is, any creditor other than the one first commencing, may, when the proceedings have been once duly instituted, come in and petition " to be *deemed* an attaching creditor ?" (§ 39.) And that such creditor, so coming in, " shall be entitled to the *same* benefits and advantages, as the creditor at whose instance such attachment originally issued ?" (§ 41.) And does not the statute further declare that the trustees, to be appointed in pursuance of it, are. " to be trustees for *all* the creditors of such debtor ?" At whose instance, moreover, are the proceedings of the officer, in case of alledged error, to be reviewed ? The statute says again, " at the instance of the debtor or of *any* creditor." And when it prescribes the notice to be published by the trustees, announcing their appointment, it declares that they, the trustees, " shall therein [among other things] require *all* the creditors of such debtor to deliver their respective accounts and demands, &c. by a day to be therein specified." And when the distribution takes place, among whom does the statute say it shall be made ? " Among *all* those who shall have exhibited their claims as creditors and whose debts shall have been ascertained, in proportion to their respective demands."

Thus *all*, at their option, may be deemed attaching creditors ; *all* are allowed to question the proceedings ; *all* are to have trustees for their benefit ; *all* are to be required to present their claims ; and *all* are to be *invited* to participate in the property of the common debts of *all :* and yet, when they accept the invitation, thus addressed to all, they are to be told that by " all" was meant, (in some cases at least,) two out of two hundred ! Such a mode of expressing ideas, it seems to me, would be a mere mockery, too gross for sensible legislators to have indulged in ; unless we suppose them to have adopted the Talleyrand maxim, that language is the instrument, not of conveying, but of concealing our thoughts.

This statute too, it should be borne in mind, in its present form, was not a hasty enactment, requiring judicial legislation to

supply its omissions. It had passed under the review—I may add the deliberate, cautious, capable review—of three of the ablest masters of legal language, appointed for the express purpose of revising and correcting any inaccuracy in the form of the then written law of the state. Every word was deliberately weighed, and every condition, incident to the matter in hand, fully considered. The revisers well knew, and they could not but have remembered, that they were dealing with the business of a commercial people—the most commercial people in the Union—a people whose foreign commerce, in proportion to their numbers, is probably the greatest in the world. They knew that a New-York debtor, whether resident or non-resident, must often have foreign creditors ; and that not unfrequently the mass of his property would be the merchandise, bought on time from such creditors. Had they intended then to exclude the foreign creditor from all share in the insolvent debtor's estate, they would have said so, in express terms. Common frankness required it at their hands. And when they used the word *all*, and repeated it in so many forms, we must presume they intended *all* that the word imports.

As to the question of policy, it is no doubt true that in cases of solvency, as well as of insolvency, the law guards the domestic creditor. But in what manner ? Not by denying to the foreign claimant his equal share, but by reserving to the domestic tribunals their proper jurisdiction over the distribution of the domestic assets. Thus a foreign assignee, appointed by and amenable to a foreign court, cannot in that character withdraw the debtor's assets from our jurisdiction and transfer them to his own domicil; nor, in case of death, can a foreign executor or administrator, meddle with the property of the deceased, within our limits, until he has submitted himself to, and obtained letters testamentary or of administration from the courts of this state. (2 *R. S.* 70, §§ 6, 8.) Our courts insist, and rightfully, that the *administration* of a debtor's assets, within our limits, where our own citizens have an interest in them, shall be here and not elsewhere. But does it follow that in protecting our own citizens we must do injustice to the citizens of other countries ?

In the matter of Coates.

In the case of a *deceased* debtor, where, as in the case of a non-resident or insolvent, the estate is also assigned by operation of law, to trustees, under the name of executors or administrators, was it ever yet contended that foreign debts were not to participate? And yet the language of the law (2 *R. S.* 87) and the reason of the thing are no stronger in the one instance than in the other.

As a question of morals, there is something most revolting in the position contended for. If judicially established, it must go the entire length of appropriating the whole of a non-resident debtor's estate within our limits, to our own creditors, to the exclusion of the foreigner, *even when every dollar of that estate had been obtained from abroad, and perhaps from that very foreigner who asks a dividend, and without a dollar being paid on its purchase.* And for such an act of unmitigated selfishness we are to have invoked the sacred name of charity—which, it is said, begins at home !

It is next contended that even if a foreign creditor is, under ordinary circumstances, entitled to a dividend, the petitioner in this case has no such right, his debt being "absolutely extinguished" by the bankrupt discharge in Great Britain.

I do not so understand the English bankrupt law. The debt is in no sense *absolutely* extinguished. It continues in full force as to all the existing property of the debtor. A subsequent promise even, may be founded on it, as a sufficient consideration in law, to bind his future earnings. The discharge presupposes, as an essential qualification or condition, that all his existing property, wherever situated, is to be appropriated to his existing debts. What is the assignment but a trust created for the benefit of creditors? And how can there be creditors without credits? To say that the debt is absolutely extinguished, is to say that the creditor, as creditor, is also absolutely extinguished. And then we are presented with this absurd consequence, the creation of a trust for the benefit of those whose annihilation is declared in the same breath.

No suit, it is said, can be maintained upon this claim, either here or in Great Britain. If, by suit, is meant one particular

kind of action, the proposition may be true; but if the term is to be taken in its comprehensive sense, the proposition is not true. A suit in equity, founded on such a debt, may undeniably be maintained against the assignees abroad; and to say that such · a suit cannot be maintained, in like manner, against the trustees here, is merely begging the question.

The true view of the whole subject appears to be this: Our policy and that of Great Britain, agree in dedicating the insolvent's estate, wherever situated, to the payment of the insolvent's debts. In its *administration*, however, we insist on the control of our own courts over that portion which happens to be within our own limits. We take this stand, not to defeat, but to insure justice; not to rob the foreign creditor, but to protect the rights of *all* the creditors. We do it to enable our courts to marshal the assets, and to correct, if necessary, inequalities abroad, by proper compensating adjustments at home. If any creditor has received a dividend from the English assignee, we can, and ought to compel him to stand aside, and wait till others, less favored, have received as much, in proportion, from the American assignee; or, which leads substantially to the same result, we can compel every creditor, seeking a dividend here, first to transfer, for the general benefit, all his claims on the fund abroad. (2 *R. S.* 36, § 11.)

The opposite doctrine, in addition to its harsh and repulsive character, in respect of foreign creditors generally, would, in one case, at least, be attended with a most absurd consequence in reference to our own citizens. A citizen of this state, residing for the time in Paris, might receive a dividend in London, under English law, if the debtor had assets there, and be denied a dividend in New-York, under American law, if the debtor had assets here. An alien, too, temporarily residing in the state, would be admitted to share in the distribution, while a citizen, who chanced to be temporarily residing abroad, would (and that under the plea of protecting his rights) be entirely excluded; thus placing, in a matter of mere justice, the comparatively unimportant circumstance of residence, however temporary and

---
Mason *v.* Jones.
---

dependent on fluctuating will and caprice, above the substantial claims of nativity and citizenship.

Such an interpretation, of an act of the legislature, could only be warranted, in a case where language had been employed, so clear and imperative as to admit of no other meaning; certainly not in a case, in which, to arrive at the result contended for, "all a man's creditors," however frequently repeated, must be construed, by implication, to exclude even a native of the state, if temporarily non-resident.

My conclusion, therefore, is, that an order should be entered, declaring the right of all the creditors of Coates & Co. whether resident or non-resident, to participate in the assets, which have or may come to the hands of the trustees; provided that, in adjusting the dividends, due regard shall be had to the assignment made under the English bankrupt law, so that no creditor, whether here or abroad, shall receive more than his equal proportionate share, of the entire estate of the debtors, wherever it may be.

Ordered accordingly.

[New-York General Term, June 11, 1852.  *Edwards, Mitchell* and *Roosevelt,* Justices.]