In the matter of the attachment against the estate of ED-
WARD BONAFFE and AUGUSTE BONAFFE.

The proceeding under the statute of New York by attachment, against the estate of non-resident debtors, may be said to be instituted, and until the appointment of trustees to be, for the benefit of the attaching creditor and such other creditors as make themselves parties to it under the statute. But upon the appointment of trustees, the proceeding becomes in fact, (by relation back from the time of issuing the attachment,) an administration of all the property of the non-resident debtor within the state, by the state or government, for the benefit of all his creditors. *Per* SUTHERLAND, J.

And a fund in the hands of the trustees, the proceeds of all the non-resident debtor's property in this state, is held by them as *public* officers, or administrators of the debtor's property; which fund, irrespective of any proceedings in bankruptcy in foreign countries, is to be distributed among all the creditors, foreign as well as domestic.

In the distribution of that fund, foreign creditors who joined in the *concordat* in proceedings in *bankruptcy* in *France*, against the debtor, or received dividends under it, are entitled to participate, ratably with the domestic creditors. BONNEY, J. dissented.

The effect of a *concordat*, and of its confirmation by the tribunal of commerce, is not to discharge the debtor's *property* in this country, or a fund realized from the attaching of it here; but such fund still remains liable to the claims of the foreign creditors, and they are entitled to be paid their distributive shares or portion thereof *pro rata* with the other creditors; and notwithstanding they may have been parties to the *concordat*, or received dividends under it. BONNEY, J. dissented.

ON the petition of Claudius Dord, an attachment, under part 2, ch. 5, title 1, article 1, of the revised statutes of New York, (3 *R. S. 5th ed. p.* 78,) was issued in December, 1847, to the sheriff of New York, against the estate of Edward Bonaffe and Auguste Bonaffe, non-resident debtors; and such proceedings have been thereon had that trustees have been appointed, who have received the estate of said non-resident debtors in New York, and converted the same into money and now have the proceeds, amounting to more than $100,000, in their hands for distribution among the creditors, pursuant to said statutes. The said debtors resided and also carried on business in France; and, being unable there to meet their obligations, and in *a state of failure*, the tribunal of commerce of Havre, pursuant to the *code de commerce* of France, in December, 1847, appointed syndics of their estate; and such proceedings were there had that a *concordat* was granted and made to and with said debtors, which, being assented to by the requisite number of their creditors, was on 23d May, 1848, confirmed and ratified by said tribunal of commerce, and thereupon became obligatory and binding on all creditors in France; whereby, and by the judgment of said tribunal, the debtors, on the surrender of their property, became and were adjudged to be free in their persons and discharged of all their debts and obligations; and their property, realized under said proceedings in France, has been, pursuant to the laws of France, applied towards payment of their debts.

In the matter of Bonaffe.

The claims and debts presented to said trustees in New York, and upon which dividends are here demanded, amounted (exclusive of interest,) to more than $785,000, and the creditors may be classified as follows :

I. Creditors residing in New York and other states of the United States, having debts contracted in the United States, who have not proved their debts in France, nor received any dividend or payment under said concordat, nor become parties to said proceedings in France. Debts of this class amount to $89,300 and upwards, exclusive of interest.

II. Creditors residing in France, having debts contracted in the United States, who have not proved their debts in France, nor received any dividend or payment under said concordat, nor come in under nor taken part in said proceedings in France. Debts of this class amount to $60,500 and upwards.

III. Creditors residing in France and having debts contracted there, who have proved their debts and secured dividends under said concordat and proceedings in France. Debts of this class amount to $477,600 and upwards.

IV. Creditors residing in the United States who have proved their debts in France, and received dividends thereon under said concordat and proceedings in France. Debts of this class amount to $158,300 and upwards.

This fourth class comprises debts of some persons, residing in New York, who, after the failure of said debtors, forwarded their claims to agents in France for collection, but gave no authority to such agents to compromise the debts, or take part in any proceedings in bankruptcy. These agents in fact received dividends out of the estate of the debtors in France under said proceedings there, and remitted the sums received to their principals, without notice to the principals that the moneys remitted were dividends paid under said concordat and proceedings in France, and said principals when they received such moneys were ignorant that any proceedings had been instituted in France ; and in their applications

to the trustees in New York for a dividend, they offer to refund the dividends received in France and so remitted to them, or to have the same deducted from the dividends to which they respectively may be here entitled.

The trustees in New York, after full hearing and argument before them of the claims of said several classes of creditors, decided :

*First.* That all creditors of said non-resident debtors, residing in New York, or in France or elsewhere, were entitled to prove their debts, before said trustees, and to receive dividends thereon, out of the funds in their hands.

*Second.* That all creditors who have received any dividend, or payment, on account of their debts, from assets of said debtors in France or elsewhere, are to be charged with every sum so received as so much paid on account of the dividend to be declared by said trustees, so that all creditors who have proved their debts here shall share equally in the entire estate of the debtors wherever administered.

*Third.* That the exemplified copy of the concordat and other proceedings in France, offered in evidence before the trustees, was competent and sufficient proof of such concordat and proceedings.

*Fourth.* That no debts due by said debtors were discharged or extinguished by said concordat and proceedings in France, so as to bar the right of the creditors to prove the same before the trustees here, and receive a dividend thereon ; whether such creditors did or did not sign or join in the concordat or receive a dividend under it, or whether or not they resided or were within the jurisdiction of the government of .France.

The petitioner, Edward Rowe, as executor of Dord, is one of the first class of creditors above mentioned ; and claiming that said first class alone are entitled to dividends out of the funds in the hands of said trustees, he brought the decisions of said trustees before this court for review. The court at special term affirmed said decisions, and ordered a distri-

bution of the estate in the hands of the trustees in conformity therewith. And from that order the petitioner appealed.

*Spier & Nash,* for Edmund Rowe, executor.

*Larocques & Barlow,* for R. Emmett and others, trustees.

*W. W. Van Wagenen,* for sundry creditors.

*B. D. Silliman,* for the Bank of Commerce.

*C. A. Rapallo,* for E. M. Davis.

*W. J. Hoppin,* for Martin & Lawson.

SUTHERLAND, J. The two principal questions in this case are, 1st. Whether, irrespective of the French bankrupt proceedings, the foreign creditors are entitled to share or participate ratably with the domestic or local creditors in the distribution of the fund in the hands of the trustees; 2d. Whether the creditors who became parties to the French bankrupt proceedings by joining in or signing the *concordat,* or by receiving dividends under it, thereby forfeited or barred the right which they otherwise would have had, to participate or share in the fund.

The first question is evidently simply a question as to the construction of the statute under which the proceeding against the estate of the Bonaffes as non-resident debtors was commenced in this state. No doubt the legislature of this state had power to direct the non-resident debtor's property or its proceeds to be divided or distributed exclusively among the domestic or local creditors. The question is not one of power, but of intention. Did the legislature intend that the fund in the hands of the trustees should be distributed among all the creditors, foreign as well as domestic, or exclusively among the domestic creditors?

The provisions of the statute (2 *R. S.* 46, §§ 32, 33) are

to the effect that the trustees after paying all debts due to the United States &c., shall distribute the residue of the moneys in their hands " among those who were creditors at the time of issuing the first warrant of attachment," and who shall have exhibited their claims, &c.

These provisions are broad enough to include all creditors, foreign or non-resident, as well as domestic or resident; and finding no other provision or provisions of the statute, inconsistent with a construction which gives the same or equal rights to all creditors, foreign as well as domestic, I think equity and international courtesy demand such construction.

If this question of construction was not decided by the court of appeals, in the matter of the attachment against *Coates & Hillard,* yet I am satisfied with the reasoning of Mr. Justice Johnson on this point, in that case, and believe the court would have sustained his views had a decision of the point been necessary.

The 2d question is as to the effect of the French bankrupt proceedings. Whether those creditors who were parties to the concordat, or who received dividends under it, are entitled to participate or share in the fund in the hands of the trustees, is a question of more difficulty; yet it is quite plain to me that the decision of the trustees on this point also was right.

It will be carefully noted that the question is not whether the French bankrupt proceeding as to the French creditors and those who became parties to it, discharged their debts, so that they could not institute any action or proceeding for the collection of their debts, as against either the persons or property of the debtors, whilst the concordat was in force, and until it should be annulled by a direct proceeding; but that the question is, whether the property of the debtors, at the time of the confirmation of the concordat by the tribunal of commerce, was discharged or intended to be discharged from the debts of such creditors. The fund in question, in the hands of the New York trustees, is the proceeds of prop-

In the matter of Bonaffe.

erty of the debtors, at the time the concordat became obligatory on the creditors by its confirmation by the tribunal of commerce ; and the question is, whether the creditors who joined in the concordat or received dividends under it, *are creditors as to that fund; not whether they remained or are creditors of the Bonaffes*. The question is not, whether the effect of the concordat and its confirmation was to discharge the debtors ; but whether the effect of the concordat and its confirmation was to *discharge the fund in question.*

The proceeding under the New York statute by attachment, may be said to be instituted, and until the appointment of trustees to be, for the benefit of the attaching creditor and such other creditors as make themselves parties to it under the statute ; for until the time fixed for the appointment of trustees, the debtor may at any time appear and have the attachment discharged, by either paying or securing such creditors in the manner prescribed by the statute ; but upon the appointment of trustees, the proceeding becomes in fact, (by relation back from the time of issuing the attachment,) an administration of all the property of the non-resident debtor within the state, by the state or government for the benefit of *all* his creditors.

In this case, then, the fund in question, the proceeds of all the non-resident debtor's property in this state, is in the hands of the trustees as *public* officers or administrators of the debtor's property. Now in the voluntary distribution of this fund by the government, the question is, whether the creditors who were parties to the concordat, or who have received dividends under it, should be considered as having thereby forfeited all right to participate in the fund. The question is not as to the right of these creditors, or of their commissioner, or liquidator under the concordat, to *enforce* any right in or to the fund in question. It may be conceded that the French bankrupt proceeding would not be recognized by the courts of this state as giving a right to institute or maintain any action or legal proceeding whatever in this state ;

and yet I do not see how that affects the question whether these creditors should be ʿpaid their distributive shares or portions of the fund.

Had there been no attachment proceeding, and the local law had permitted Auguste Bonaffe as the liquidator or administrator for the creditors under the French bankrupt proceeding, to administer the property here as well as elsewhere, and he had done so, creditors residing here, who had presented and verified their debts, would have been entitled, by the French law, to share ratably in all the assets, or proceeds of all the assets of the debtors, as well in the assets or proceeds of the assets in France and other places out of this state as in the assets or proceeds of the assets in this state. Then, as there was an attaching creditor here, and, as a consequence, the local law has given the administration of the assets here exclusively to the trustees or local authorities here, why should not the French and other creditors who were parties to the concordat, or who received dividends under it, who have presented and verified their claims here, be entitled to share ratably in the assets or proceeds of the assets here ? It is plain that equity and international comity require that they should, unless the effect of the ʿconcordat was, not only to free and discharge the persons and all future acquisitions of the debtors from the debts of these creditors, *but also their property in this state and elsewhere at the time of their failure; and whether such by the French law was the effect of the concordat*, not whether it discharged the persons and future acquisitions as to the French creditors and those who ·became parties to it, I think is the real question in this case.

As near as I can understand the various articles of the French code relating to "failures and bankruptcies," the effect of the declaration of the failure by the judgment of the tribunal of commerce is, to divest the debtor or failed person of the administration of all his property, and give it to the syndics or assignees, at first provisional and then definitive, under the supervision of the judge commissary. But this di-

In the matter of Bonaffe.

vestiture is only provisional, and is subject to the right of the failed person and a majority of his creditors in number and representing three-fourths, of the debts in amount, if the failure is declared excusable, to make or enter into the agreement called the concordat. (*Art.* 507.)

The concordat must be confirmed or homologated by the tribunal of commerce, to make it effective; but when so confirmed, the functions of the syndics or assignees cease, and they render to the failed person an account of their administration and deliver to him all his assets, books, papers and effects. Of the transaction a report is made to the judge commissary, and then his functions cease. (*Articles* 516, 519.) The concordat can be annulled by action, for fraud discovered after its homologation, and perhaps for other causes; but until so annulled, it is obligatory upon all the creditors. (*Articles* 516, 518.)

The concordat, then, is an agreement or composition between the failed person and creditors, forming the majority in number and representing at least three-fourths of his debts; the terms and conditions of which, subject to certain legal regulations and to judicial confirmation, the parties are permitted to fix; and the effect of which is, to restore to the failed person the administration of his property, upon or subject to the terms and conditions thereby agreed upon.

The failure of the Bonaffes was pronounced excusable; a concordat between them and creditors of the requisite number and representing the requisite amount was entered into and confirmed. By the very first article of this covenant, the Bonaffes *surrender and abandon to their creditors all their assets* (so restored, or to be restored to them, by the syndics or assignees, on the confirmation of the concordat) *as well in the United States as in France and other places, to be sold and liquidated.* By the second article, the liquidation is to be made by Auguste Bonaffe, (one of the failed firm,) whom the creditors make commissioner or liquidator for that purpose, giving him full powers to receive all sums, to give re-

ceipts and to institute all proceedings and suits &c. By the third article, after paying the bankrupt or failure expenses, the remainder is to be distributed among the creditors ratably. By the fourth article, as soon as the concordat shall have been confirmed, such confirmation shall be made known to the syndics or assignees, who shall give up their accounts to the bankrupts or failed persons, " *and the latter shall be free in their persons and their property.*"

It is clear that these last words were not intended, and could not have the effect to discharge or free the property of the Bonaffes in the United States and elsewhere at the time of the failure, from the debts of their creditors generally, or the debts of such as signed the concordat, for they had already by the first article absolutely surrendered and abandoned all such property to their creditors.

The Bonaffes by the concordat absolutely surrender and abandon all their property to their creditors, in consideration of which the creditors agree that they shall be free or discharged from their debts as to their persons and property.

Can any thing be clearer than that the effect of this composition or agreement was, and was intended to be, to leave all the property of the Bonaffes, in the United States and elsewhere, not only subject to the payment of their debts, but absolutely to appropriate it to that purpose ; Auguste Bonaffe undertaking, simply as commissioner or attorney, to liquidate or administer the surrendered assets, *for the benefit of the creditors.*

The assets in the state of New York were of course so surrendered subject to the attachment proceeding here, and subject to the exclusive right of the authorities here to administer the assets here, and subject to such principle of distribution as the authorities or courts here should determine on ; but the moment you admit or adopt the just principle of the distribution of the New York assets, or of the proceeds of those assets to be, that all the creditors, foreign as well as domestic, are entitled to participate ratably in the same, it follows that

In the matter of Bonaffe.

this French bankrupt proceeding could not, and ought not, to prevent the French and other creditors who were parties to it, from participating in such New York assets, or their proceeds in the hands of the trustees.

Assuming the just principle of the distribution of the fund in the hands of the trustees to be that all the creditors foreign as well as domestic have equal rights ratably in that fund, to meet the creditors who were parties to the concordat when they apply for their ratable share of that fund, with the technical pretense that by the concordat they had discharged their debts, *or the debtors and their property*, from the payment of their debts, would in my opinion be not only a breach of international courtesy but of international justice.

It is plain to me that the decision of the trustees as to the distribution of the fund in their hands was right, and that it should be affirmed with costs.

The decision of the court of appeals in the matter of the attachment against *Coates & Hillard*, before referred to, that the debt of the petitioners in that case was discharged by the bankruptcy proceeding in England, and therefore that they were precluded from claiming *as creditors of the bankrupts*, is not, I think, in point, and should not control our decision in this case.

The effect of the English bankrupt proceeding, as I understand it, is, to absolutely divest the bankrupt of his property, and vest it, perhaps at first in the commissioners, but subsequently in the assignees; and the petitioners in the case of *Coates & Hillard* could not therefore be said to have any right or interest in the property itself; whereas in the case before us, the effect of the concordat, as I understand it, was to divest the syndics or assignees of all the bankrupt's property, and give it absolutely to their creditors. Besides, in the case of *Coates & Hillard*, the English assignees were not parties; and the court of appeals did not decide, in that case, that the assignees, as such, could not have claimed a right to participate in the fund.

ALLEN, J.   I concur in the result of Judge Sutherland's opinion, and agree to an affirmance of the order made at special term.

The right of foreign creditors to share in the distribution of the estates of these debtors (when proceeded against under our attachment laws,) I consider settled by the decision of this court in the Coates case, which was not reversed by the court of appeals.   The principle, it is true, was not affirmed by the latter court, the judgment of affirmance having been put upon a ground which avoided that question. But the question is not open for a re-examination in this court, and without considering it upon its merits, I prefer to rest my decision upon the doctrine of *stare decicis*.

Neither do I deem it necessary to inquire into the rights of the French creditors of the Bonaffes, or other creditors who became parties to the proceedings in France by proving their debts, accepting dividends, or otherwise, as against the debtors personally or their subsequently acquired property. It may well be that the debtors were discharged in their person and estate (that is, estate thereafter acquired,) from their debts existing at the time of the homologation of the concordat, and the debts nevertheless remain as against property of the debtors before then acquired, or as between the creditors and their persons.

The debts necessarily exist as against the property which came to the hands of the liquidator or commissioner under the concordat for administration and distribution.   The creditors do not take an interest in the property in specie, but they acquired a right as creditors to share in the proceeds in proportion to their debts.   So that the discharge is not absolute, but qualified, and only to a certain extent and as to certain remedies.   Whatever may be the rights of creditors, whose debts have been absolutely discharged by decree in bankruptcy, as in the case of Coates, before referred to, in which the court of appeals held that one whose debt had been discharged under the English bankrupt act could not prove such

In the matter of Bonaffe.

debt against the estate if the debtor proceeded against him as a non-resident, I think this case is distinguishable from that. If they cannot be distinguished, then the creditors whose debts were under the operation of the French procedure ought not to be allowed to come in here, unless it can be shown that the debtors still remained liable to their creditors either absolutely or conditionally. I assume, however, that the debtors were discharged by the concordat when ratified and confirmed by the tribunal de commerce ; that is, in the language of the concordat, were "free in their persons and their property."

The discharge, however, is the result of an agreement between the debtor and his creditors, a certain proportion of the latter having debts, bearing a given proportion to all the debts owing by the bankrupt, having by law the right to speak and act for all ; and the law regulates, and the court supervises, the acts and agreements of the parties, instead of discharging the debtor by a new judicial proceeding. This regulation and supervision is to protect the interests of the minority, or the absent creditors, rather than for any other purpose. Hence, the parties to the concordat make their own terms and conditions, and those terms and conditions may vary with every case ; but when they are approved by the court and performed by the debtors, the agreement for a discharge becomes operative and effectual, according to the agreement, and not otherwise.

At the time of the institution of the proceedings in France, or rather the day before the appointment of syndics pursuant to the code de commerce, these attachment proceedings were commenced here. The property of the debtors in this state was divided by such proceedings to the extent of the debts due the attaching creditors ; and unless the attachment should be discharged, their property was entirely divided, and the estate was held for distribution, not only among the attaching creditors, but all that should prove their debts. The attachment was not discharged, and all creditors, unless

bound by some act of theirs, or by law, became entitled to participate in the fund, and the debtors only retained an interest in the estate and its proceeds, subject to this right, or, in other words, in the surplus after all the debts that should be proved were paid. But the right to prove was common to all creditors. When the concordat was settled, one of its articles, and that which constituted the consideration of the agreement of the creditors, was that the debtors did surrender and abandon to their creditors all their assets, as well in the different states of America, and particularly in the United States and Mississippi, as in France and its colonies, and other places whatsoever, to be sold and liquidated under superintendence, without any other reserve, &c.

The debtors could only surrender the property in this state subject to the rights of creditors under the attachment, including the right of the French creditors, to prove their debts if the preceedings were prosecuted to a final distribution of the estate. This right the creditors nowhere released or abandoned ; and Auguste Bonaffe, as the liquidator of the estate in France, could not intervene here under the attachment proceedings. It followed then that the creditors' whole proceeding in terms for a surrender of the estate of the debtor to their use as a condition of the discharge, and asserting their right to share and participate in the entire estate wherever situated, must be held to have released a very considerable portion of such estate and yielded it to other creditors, or it must be held that *quoad,* the attached property was made, as they cannot have the benefit of their agreement under the administration of the liquidator. These debts still exist, and are provable as such, subject only to, such deductions as are just, having reference to the proceeds of the other property of the debtors in which they have shared. It is true, there is a difficulty in the proper settlement of the different accounts and claims and marshalling of assets, but this should not interfere with the judicially established right of foreign creditors to come in and claim under our at-

In the matter of Bonaffe.

tachment proceedings. My conclusion is that *quoad* the property of the debtor, the French claimants are still creditors. The order of the special term was correct, and should be affirmed.

BONNEY, J. (Dissenting.) The question as to the admissibility of the exemplification of the proceedings in France in evidence before the trustees, has not been argued on this appeal, and the only question to be determined is, what creditors of Messrs. Bonaffe are entitled to dividends out of the estate in the hands of the trustees.

Our statute provides that in proceedings by attachment against non-resident debtors, the trustees, after paying costs of proceedings &c. shall distribute the residue of the moneys in their hands among all those who were creditors at the time of issuing the warrant of attachment, who have exhibited their claims and whose debts shall have been ascertained. (*R. S. part 2, ch. 5, title 1, art. 8, 5th ed. vol. 3, p.* 120, § 38.) No creditor is preferred or excluded by reason of his residence in New York or elsewhere, or on account of the place where his claim or debt was contracted or made payable ; but all "*creditors*," within the most extended definition of the word, who were such when the warrant of attachment was issued, and have exhibited their claims, and whose debts have been ascertained, are entitled to participate. This was decided by this court in the matter of *Coates and Hillard*, (13 *Barb.* 452,) and that decision was affirmed by the court of appeals. It is not alleged or pretended that any of those who claim to be entitled to a dividend in this matter, were not creditors of Messrs. Bonaffe · at the time when this attachment was issued, or that their debts have been assigned or paid wholly or in part, or been in any manner discharged, barred or affected, except by or under the concordat and other proceedings in France, or the payments there made ; and consequently the sole question to be determined is as to

the effect of that concordat and proceedings, and of the payments made in France upon such debts respectively.

The law of France applicable to this question (code de commerce) provides (art. 438) that *every person failing* shall, within three days, make report thereof to the tribunal of commerce, and (art. 439) attach thereto a statement of his affairs containing a schedule of his property and liabilities. Thereupon (art. 440) *the failure is declared by judgment of the tribunal,* which judgment, (art. 443) from its date, divests the failed person of all his property and prevents the prosecution of any action against him, or any execution against his personal or real property; such judgment (art. 444) renders *demandable,* in respect of the failed person, his liabilities not yet due ; and also (art. 446) renders void many specified acts done by the failed person, within ten days preceding the date of the failure, or since that date. Such judgment (art. 451) designates a member of the court as *judge commissary,* who (art. 456) is specially charged with the administration of the failure, and required to report to the tribunal all contestations to which it gives rise. Such judgment (articles 455, 458) also orders all property of the debtor to be sealed up and his person to be incarcerated or kept in the manner designated ; and (art. 462) appoints one or more *provisional syndics.* The judge commissary immediately calls a meeting of supposed creditors to be held within a certain period, not exceeding a fortnight, at which he consults the creditors present, in relation to the formation of the list of presumed creditors, and the nomination of new syndics, and then reports the proceedings to the tribunal, which thereupon names *definitive syndics,* who (articles 471, 474, 484; &c.) take the management of the estate of the failed person, collect debts and sell property &c. under the supervision of the *judge commissary,* and (art. 489) pay all proceeds over to the treasury of deposits and assignments. Immediately after definitive syndics are appointed, (art. 492) notice is given by publication, and by letter of the clerk of the tribunal, to all creditors to appear and present their claims

In the matter of Bonaffe.

within twenty days from the date of the first publication; all creditors residing in France are allowed certain additional days, according to the distance of their residence from the place where the proceedings are had, and those out of France additional time, from two months to one year; and (articles 493, 494) times are appointed for verification of debts, which may be contested by other creditors, or by the debtor. And (art. 497) those debts which are admitted, are so marked by the syndics, and certified by the judge commissary; and for eight days after such verification any creditor may be held to vouch his debt. After the expiration of the delays required as regards persons domiciled in France, (art. 502) the formation of the concordat and the *operations of the failure* are proceeded with, subject to certain exceptions in favor of creditors domiciled out of continental France.

In three days after the last mentioned delays (articles 504, 505) a meeting is convoked by notice of all creditors whose claims have been admitted, *for the purpose of deliberating on the formation of a concordat,* at which meeting the judge commissary must preside, and the debtor is required to attend.

The concordat (agreement, art. 507) can be established only by the concurrence of a majority of the creditors representing at least three-fourths of the total amount of debts admitted; and (art. 509) must be signed while the meeting is in session; and (art. 512) within the week following the concordat, all creditors who have had the right to concur therein, or whose right shall have been afterwards acknowledged, may present *objections* thereto, *which shall be heard before the tribunal.*

The confirmation of the concordat (art. 513) must be moved before the tribunal, but cannot be decided before the expiration of the above mentioned delay of eight days, and (art. 514) before the homologation (allowance or confirmation) of the concordat, the judge commissary must make before the tribunal a report on the general character of the failure, and on the admissibility of the concordat.

Art. 516. " The homologation of the concordat will render it obligatory on·*all the creditors, named or not named, in the balance sheet, verified or not verified,* and even upon the creditors domiciled out of the continental territory of France, as well as upon those who, in virtue of articles 499 and 500, have been admitted provisionally to deliberate— whatever may be the amount that the definitive judgment may finally allow to them."

As soon as judgment of homologation becomes definitive (art. 579) the functions of the syndics and of the judge commissary (after he has made his report) cease. And the syndics account with the failed person and deliver to him all the assets.

The proceedings in this case, of Messrs. Bonaffe, appear to have been conducted in conformity with the provisions of said code. On 12th May, 1848, a meeting was held pursuant to notice, at which the judge commissary presided, and the debtors, and 52 (being a majority) of their creditors, representing three-fourths in amount of all the debts stated in the proceedings, then appeared, and also the definitive syndics (or assignees) who made a report of the condition of the estate, and proceedings had. Whereupon *Auguste Bonaffe,* on behalf of himself and Edward Bonaffe, *made to the creditors the proposition to be entirely acquitted and discharged towards them by making surrender to them of all their assets, as well in the states of America, the United States and Mississippi, as in France, its colonies and elsewhere,* to be sold and liquidated, reserving only their movable furniture— and the furniture of their counting house—which proposition the 52 creditors accepted. And then the *judge referee, considering that all things were correct and as required by the code, and that there was no objection to the composition,* drew up the agreement of the parties (concordat) to this effect :

*First.* The debtors surrender to their creditors all their assets, every where, to be sold and liquidated under super-

vision; reserving only their movable furniture and household furniture.

*Second.* The liquidation shall be made by Auguste Bonaffe, appointed liquidator, with ample powers to do all things necessary for collecting the assets and converting them.

*Third.* The expenses of the proceedings and the debts entitled to preference shall be deducted, and the balance of the assets distributed to the creditors *pro rata.*

*Fourth.* The concordat, when confirmed, shall be made known to the syndics (assignees) who shall give up their accounts to the debtors (failing parties) and they (the debtors) shall be free in their persons and their property; and consequently all seals and executions on the things belonging to them, and the inscription in the mortgage office, are unconditionally withdrawn.

This concordat was then signed by all the parties, and, being properly reported, on 23d May, 1848, the tribunal of commerce authorized it to be executed according to its form and tenor; *and declared the said composition to become obligatory on all the creditors, subscribers or non-subscribers, credited and not credited, entered and not entered, on the balance sheet.*

The balance sheet of debts admitted show:

Debts entitled to preference, . . F. 130,887 10
" by specialty, . . . . . . 2,244,984 40

Francs 2,375,871 50

Among which does not appear the name of Claudius Dord.

What then is the effect of this concordat, thus made, pursuant to the French code, and by judgment of the tribunal of commerce, authorized (confirmed) and declared to be obligatory *on all the creditors ?*

The whole proceedings, from their inception to their conclusion, are strictly regulated by the code de commerce, and if not conducted in pursuance of such regulations are absolutely void. The terms of the concordat at first agreed upon

at a meeting at which are present the "failed persons," the requisite proportion in number and amount of their creditors, the judge commissary having charge of the proceedings, and the definitive syndics having the custody and charge of their property, are reported to, and made a judgment of the court (tribunal of commerce) having jurisdiction; and that concordat so made a judgment pursuant to said code, amounts, as I understand it, to this: That the whole estate of the "failed persons," (except their furniture) is surrendered by (transferred from) them for the benefit of their creditors, to the liquidator (assignee) designated in the concordat, to collect, realize and distribute the same; and, thereupon said "failed persons are entirely acquitted and discharged" towards their creditors—that is, are absolutely discharged from their debts. This was the proposition made by the "failed persons" and accepted by the creditors, and by the concordat and judgment of the court, as I understand them, carried into effect.

It is true that before the concordat was made, an attachment had been issued in this state, pursuant to our law, and the property of the failed persons within this jurisdiction was held thereby, so that said liquidator cannot probably obtain the same, or the proceeds thereof, for distribution among the creditors under the proceedings in France; but that fact (in my opinion) did not affect the surrender made as aforesaid or the discharge granted thereupon, both of which became absolute on the entering of the judgment confirming the concordat and declaring its obligation.

As I view these proceedings under the law of France, and the concordat thus made and established by the judgment of the proper court, they are essentially and in effect the same as proceedings in bankruptcy taken, and a discharge granted under the bankrupt law of England. The ultimate result of the proceedings under French law, as well as under English law, is the surrender of all property of the failed person or bankrupt, so far as he has any power over it, and

his absolute discharge from all claims of creditors who are parties to the proceedings, or subject to the law of the country in which such proceedings are taken.

These further questions then arise : What creditors of Messrs. Bonaffe are bound by their discharge under said proceedings in France ? And, what is the effect of that discharge upon the rights of such creditors to receive a dividend out of the proceeds of the property attached in this state, and to be distributed by these trustees ?

In the matter of *Coates & Hillard*, above referred to, it was declared by the court of appeals, (as I understand that decision,) that all debts which Coates & Hillard owed to persons against whom their discharge in bankruptcy, under the laws of England, was effectual, were thereby absolutely discharged, and such persons were no longer *creditors of said bankrupts*, and consequently could have no claim to receive a dividend out of the proceeds of their property attached in this state ; and that decision, in my opinion, applies directly to this case.

It is clear then that all creditors of Messrs. Bonaffe, who became parties to the proceedings in France, and signed said concordat, are bound thereby, and their debts are discharged.

It must also be held, on well settled principles, that all creditors residing in France, and having debts contracted in France, are bound by proceedings had under and pursuant to the laws of France, and their debts must be considered barred or discharged by this concordat and judgment. (*Smith* v. *Buchanan*, 1 *East*, 6.) And also that all creditors, wherever residents or wherever their debts were contracted, who since the making and confirmation of this concordat have voluntarily come in and received a dividend under it, have become bound and their debts barred or discharged thereby. (*Tindal* v. *Hibbard*, 40 *Eng. L. and Eq. Rep.* 268. *Watkinson* v. *Inglesby*, 5 *John.* 386. *Clay* v. *Smith*, 3 *Peters*, 411.)

In my opinion, also, those creditors residing out of France, whose debts were contracted in France, and there payable,

are bound by the discharge of the debtors under French law. But creditors resident out of France and having debts contracted out of France, whether payable in France or elsewhere, in my opinion are not bound by the discharge of these debtors, by reason of the concordat and judgment to which such creditors have not become parties nor assenting; and any creditor who has sent his claim to an agent in France for collection only, will not, I think, be prejudiced by reason of his agent having, without authority except to collect only, received a dividend under the proceedings in France, and remitted the same to his principal here, who has received such remittance and retained it without notice or knowledge that it was paid by the liquidator under this concordat. (*Donnolly* v. *Corbett*, 3 *Seld.* 500. *See Story's Confl. of Laws*, § 337 ; *Tappan* v. *Poor*, 15 *Mass. R.* 419 ; *Cook* v. *Moffat*, 5 *How. U. S. Rep.* 295, 314.) The debt held by this petitioner is one of the last mentioned class, and is not bound by the concordat and judgment, and he may claim a dividend from the trustees, and may contest the validity of the other debts on which a dividend is also claimed.

In my opinion the order made at special term should be reversed, and an order be entered directing the application of the funds in the hands of the trustees, pursuant to the conclusions above stated.

Order appealed from affirmed, with costs.

[NEW YORK GENERAL TERM, November 5, 1860. *Sutherland, Allen* and *Bonney*, Justices.]