## JAMES SAVAGE and others *vs.* ROCKWELL PUTNAM and others.

The ordinary effect of the death of one of the members of a partnership is, to work its dissolution. The partnership is ended. The connection has been dissolved; and the future relations of the surviving partners to each other must be determined by some new agreement between them, or by the results which the law pronounces upon their acts and proceedings, when no new agreement is in fact made. And so of a change in the concern, effected by a transfer of stock.

Where articles of copartnership provide that parties may transfer their stock—in effect that new members may be introduced into the firm, and existing members may withdraw—the object of which provision is to *continue* the partnership, and prevent its dissolution; the effect is to make the new stockholder a member of the firm, with all the ordinary rights and liabilities of a partner, entitled to all the property, profits and dividends represented by his shares of stock, and subject, to the same extent, to all the debts, liabilities and losses of the concern. He takes the stock *cum onere.*

In 1847 two of the plaintiffs, R. and W., together with other persons, entered into a partnership or company, for lumbering purposes, with a capital of $10,000. They subscribed certain articles of association specifying the officers and directors of the association and the mode of carrying on its business. The 12th article provided for a transfer of the stock owned by any member, and in effect authorized such transfer to any third person, on notice to the directors. The articles did not declare what should be the effect of such a transfer, nor whether the out-going member should remain liable, or the in-coming member should become liable for the then existing debts of the copartnership, as between the members themselves; nor what should be the effect of the death of any of the members upon the existence or terms of the partnership. Prior to July, 1849, various changes had occurred in the membership of the association, by transfers of stock between members, and to new parties, and W. P., one of the original shareholders had died. All of the present plaintiffs, and the defendants P. and V. had become members of the association. At this time a new agreement, in writing, was entered into, subscribed by the parties to this action, recognizing the existence of the association, reciting what lands belonged to it, and who were the holders of the shares, and declaring that said lands were owned by them in proportion to the amount of their shares of stock, and pledging their respective interests in the property and effects of the association to the payment of all the existing *and future* debts of the association, and promising to pay such indebtedness in proportion to the amount of their stock. The agreement further provided that the subscribers should not be liable for any debts contracted after they had sold out their stock and left the association &c. On or prior to October 25th, 1853, P. and V. sold out their stock, and ceased to be members of the concern. Various loans had

Savage *v.* Putnam.

previously been made, and debts incurred, to carry on the business of the association. Subsequent to that time, the plaintiffs, with the funds of the association, paid several of its debts contracted while P. and V. were stockholders. This suit was brought to enforce a contribution by P. and V. to those debts. P. claimed to be allowed, as a counter-claim, the sum of $305,46 which he had been compelled to pay, upon a debt of the association incurred during his membership.

*Held*, 1. That under the original articles of association P. and V., though liable to the creditors of the copartnership, for any indebtedness existing during their membership, were not primarily liable, equally with the plaintiffs, but were merely sureties for the plaintiffs as their principals, and were therefore not liable in this action.

2. That the plaintiffs were not aided by the new agreement, of July, 1849.

3. That P. having been compelled, as surety for the plaintiffs, to pay a debt owing by the copartnership, was entitled to his remedy over against his principals; and that his counter-claim was therefore properly allowed.

THIS was an appeal by the plaintiffs from a judgment rendered on the report of a referee in favor of the defendants Rockwell Putnam and Sidney Verbeck, dismissing the complaint with costs as to them, and allowing a counterclaim in favor of the defendant Putnam against the plaintiffs. On the 19th of January, 1847, two of the plaintiffs, with other persons, formed a company under the name of the Saratoga Steam Mill Lumbering Association, and entered into articles forming this company with a capital of $10,000, divided into one hundred shares of one hundred dollars each. These shares were transferable to other persons, after three days' notice to the directors of the intention to make the transfer, and giving the right of pre-emption to any member of the association. A president, secretary, treasurer and directors were provided for, and detailed directions given as to the mode of managing the affairs of the association. In April, 1849, Washington Putnam, one of the original subscribers, died, and under the provision for the transfer of stock various changes had been made in the membership of the association, prior to the 27th day of July, 1849. All the present plaintiffs, and the defendants, Putnam and Verbeck, had become members. The defendant Young came in subsequently. On the 27th day of July, 1849, the plaintiffs and

the defendants, Putnam and Verbeck, subscribed a written agreement, reciting the lands belonging to the Saratoga Steam Mill Lumbering Association; stating that they belonged, in certain shares, to Patrick H. Cowen, estate of Washington Putnam, Rockwell Putnam, William L. F. Warren, George W. Wilcox, Enoch H. Rosekrans, Sidney Verbeck, James Savage and James M. Andrews, and they covenanted that each of said parties, so composing said association, held such interests in said lands and premises as were proportioned to the amount of their shares in the capital stock. They further agreed that their interests in the real and personal property of said association, then owned or thereafter acquired, should, if necessary, be proportionably appropriated to the payment of all debts and demands then outstanding against said association, and should also be held as security for all notes thereafter made or given, and for all indebtedness incurred for the use and benefit of said association in the management of their business; and in case of default in paying such proportional share, that their respective interests in said real and personal estate might be sold at public auction on three months' notice in a public newspaper, under the direction of the directors, and the avails appropriated to the costs and expenses of the sale and the payment of said debts. They further agreed to pay their proportionate share of all notes and indebtedness so given or increased, to the persons intitled thereto. But they were not to be liable for any notes or indebtedness given or contracted after they had sold out their stock and left the association, nor for any notes or obligations not signed or indorsed by them, nor for any indebtedness to which they had not given their consent. Between that date and the 20th day of July, 1853, the defendants, Putnam and Verbeck, sold out their stock and left the association, and the defendant Young became a member thereof. Between the same dates, also, and while Putnam and Verbeck were members, various debts were contracted in the business of the association. After the last mentioned date several of these

debts were paid by the plaintiffs out of the funds and property of the association, and this suit was instituted to compel contribution by the defendants, Putnam and Verbeck, to those debts, they refusing to pay on the alleged ground that before the payment thereof they had ceased to be members of the association, and stood only in the situation of sureties to the plaintiffs. The referee so held, and dismissed the complaint as to them. He also allowed to the defendant Putnam a counter-claim of $305,46 for that amount which he had been compelled to pay upon a debt of the association incurred during his membership.

*W. A. Beach,* for the appellants.

*A. Bockes,* for the respondents.

*By the Court,* HOGEBOOM, J. The judgment which the plaintiffs ask in their complaint in this action is, that the copartnership between them and the defendants Putnam and Verbeck, may be dissolved; that an account may be taken of the copartnership dealings, indebtedness and effects; and that the real estate and effects of the copartnership may be sold, and the avails applied to the indebtedness of the copartnership and the equitable claims of the copartners as between themselves, and if insufficient for that purpose, that the parties may be compelled to contribute their proper proportion of the deficiency. The plaintiffs ask also for general relief.

The judgment which the referee has rendered, and from which an appeal is taken to this court, is that the complaint be dismissed with costs as to the defendants Putnam and Verbeck; and that the defendant Putnam recover, as for a valid counter-claim, the sum of $305.46 with interest, against the plaintiffs, and that he have execution therefor; and that the said judgment be without prejudice to any further action or proceeding by the plaintiffs and the defend-

ant Young, or any of them, as between themselves or any other persons than the defendants Putnam and Verbeck.

Although the judgment rendered may possibly not cover the entire relief to which the plaintiffs might be entitled upon the case made by the pleadings and proofs, I shall assume that the only matter really in controversy between the parties is, whether the defendants Putnam and Verbeck are primarily liable, equally with the plaintiffs, in proportion to their interests in the partnership business at the time they sold their stock, for the then existing debts and liabilities of the copartnership, so as to entitle the plaintiffs to institute this suit against them for contribution; or whether the defendants Putnam and Verbeck, though liable to the creditors of the copartnership for any indebtedness existing during the period of their connection therewith, are in fact merely sureties for the plaintiffs as their principals, and therefore not liable in this action.

The defendants were not originally members of the partnership. In 1847 two of the plaintiffs, Rosekrans and Wilcox, together with other persons, entered into a partnership or company and subscribed certain articles of association, forming a company called the Saratoga Steam Mill Lumbering Association, with a capital of $10,000 divided into shares of $100 each. The articles provided for officers and directors of the association, and for the mode of carrying on its business. The 12th article provided for a transfer of the stock owned by any member, and in effect authorized such transfer to any third person, on giving the directors three days' notice of such intended transfer, and allowing any member of the association the first privilege of purchase. They did not declare what should be the effect of such transfer, nor whether the outgoing member should remain liable, or the incoming member should become liable, for the then existing debts of the copartnership, as between the members of the firm themselves. Nor did they provide what should be the effect of the death of any of the members upon the existence

or terms of the partnership. Both of these contingencies, however, occurred, and as the parties themselves have not provided for them, the effect which these events produced upon the relations of the parties to each other, must be determined by the rules of law. The ordinary effect of the death of one of the members of a partnership is to work its dissolution. The partnership is ended. The connection has been dissolved, and the future relations of the surviving parties to each other must be determined by some new agreement between them, or by the results which the law pronounces upon their acts and proceedings when no new agreement is in fact made.

And so of a change in the concern effected by the transfer of stock. As this is allowed by the articles of association, it follows that the vendor of the stock must cease to be, and the purchaser of the stock must become, a member of the association. If it were a corporation, neither the outgoing member, nor indeed any of the stockholders, would be personally liable for the debts of the concern, unless made so by the law which created the corporation. In the case of a voluntary association, the liability of the outgoing member would depend upon circumstances. In the absence of any agreement upon the subject, or any specification or limitation of time for the continuance of the partnership, the withdrawal of any member of a firm would work its dissolution, and the introduction of a new member would create a new partnership. Here, however, there is an agreement that parties may transfer their stock—in effect that new members may be introduced into the partnership, and existing members may withdraw. The object of this is to *continue* the association, and to prevent its dissolution. And the effect, I think, must be to make the new stockholder a member of the firm, with all the ordinary rights and liabilities of a partner—entitled to all the property, profits and dividends which are represented by his shares of stock, and subject, to the same extent, to all the debts, liabilities and losses of the concern.

He takes the stock *cum onere.* The vendor of the stock is supposed to examine all these questions before he sells his stock; and he sells it for a high or low price, accordingly. The same thing occurs to the purchaser. I think, therefore, the vendor of the stock, in the absence of any stipulations to the contrary, from the time of the sale relieves himself, as between him and his former associates, from all liability for the past indebtedness of the concern, as he certainly disen-titles himself to any account for the property or profits of the establishment. It is really what the law denominates a continual partnership; but it is not very material whether it is styled a continuation of the former firm, or a dissolution of the old and the formation of a new one, with an implied or express understanding that the new shall occupy the place of the old one, entitled to its benefits and subject to its liabilities.

Prior to July, 1849, various changes had occurred in the membership of the association. Shares of stock had become transferred, sometimes between the members themselves, sometimes to new parties, so that before the period last mentioned Washington Putnam, one of the original shareholders, had died, and all of the present plaintiffs, and also the defendants Putnam and Verbeck, had become members of the association, holding various and unequal shares of stock. At this time a new written agreement was entered into, subscribed by all the parties to this action, (except Young) recognizing the existence of the association, reciting the lands which belonged to the association, and who were the holders of the shares, (the last named parties and several others,) declaring that said lands were owned by them in proportion to the amount of their shares of stock, and pledging their respective interests in the property and effects of the association to the payment of all the existing *and future* debts of the association, and providing further for a sale of such interest by the *directors* in case of default of such payment, and promising to pay such indebtedness, (past and future,)

Savage *v.* Putnam.

in proportion to the amount of their stock. The agreemen<sup></sup>
further provided that they should not be liable for any debts
contracted after they had sold out their stock and left the as-
sociation, nor for any indebtedness to which they had not
given their consent.

After the making of this agreement, and before the de-
fendants Putnam and Verbeck retired from the association,
various loans were made and debts incurred, to carry on the
business of the association. On or prior to the 25th day of
October, 1853, the defendants Putnam and Verbeck had sold
out all their stock, and ceased to be connected with the con-
cern. Subsequent to that time, and as the referee finds,
with the funds of the association, the plaintiffs paid several
of the debts of the association contracted during the period
that Putnam and Verbeck were shareholders, and this suit
is brought to enforce a contribution to those debts. I have
already expressed the opinion that under the original articles
of association such liability did not exist. The question is
whether the plaintiffs are aided by the new agreement of
1849. By that agreement the existence of the original asso-
ation is recognized, and the terms of those articles of associ-
ation must be observed, except so far as they are modified by
the subsequent agreement. By that agreement, it is stipu-
lated that the subscribers to it will pay the existing and future
liabilities of the association, and that their interest in the
property and effects of the association may, if necessary, be
applied to that object. But I think it must be understood
that this was with the qualification that their liability as
between themselves should be limited to the period of their
membership. And, thus understood, it expressed precisely
what would be their legal liability under the original articles.
There seems no reason why they should have contracted a
liability unlimited in amount and perpetual in duration, in a
business over which, after they left it, they had no control,
in whose profits they did not participate, and whose assets
were properly applicable to the extinguishment of these de-

---

---

mands, and had been doubtless applied to such purpose, so far as those demands had been actually extinguished. I am unable to see that the conclusion sought to be drawn by the plaintiffs from the terms of this agreement, reasonably or naturally flows from it; and I am of opinion, therefore, that the report of the referee is right upon that part of the case.

It follows also, as a consequence of this construction, that the referee was right in allowing the set-off. Putnam was in legal effect the mere *surety* for the plaintiffs for the debts which his withdrawal from the concern imposed upon the remaining members of the copartnership. He was, however, liable to the creditors themselves, and being thus compelled to pay, was entitled to his remedy over against his principals. The substance of this defense is set forth in his answer, and it was a matter of discretion on the part of the referee to allow an amendment so far as to present it in such a formal way as to enable him to obtain the benefit of it at the hearing, as a valid counter-claim.

The report of the referee seems to be right in all material respects, and the judgment entered upon it should be affirmed, with costs.

[ALBANY GENERAL TERM, December 5, 1859. *Wright, Gould* and *Hogeboom*, Justices.]