JOHN CRAIG, Respondent, v. THE ROCHESTER CITY AND BRIGHTON RAILROAD COMPANY, Appellant.

*Ownership of lands bounded on highway—Railroad tracks—Additional burden—
Constitutional prohibition.*

The construction of a railroad along a street or avenue in a city imposes an additional burden upon the property-holders bounded by the centre of said street or avenue, within the meaning of the constitutional provision which forbids such taking without compensation.

This is an appeal from a judgment of the General Term of the Supreme Court of the Seventh District, perpetually enjoining the Defendant from laying its track (a horse-railroad track) in East Avenue, a public street of the city of Rochester, opposite the premises of the Plaintiff, or doing anything in relation thereto. The facts of the case are as follows:

The Defendant was organized under and by virtue of the general railroad act, on the 20th day of May, 1862. On the 24th day of June, 1862, the Defendant procured the consent of the Common Council of the city of Rochester to its constructing, maintaining, and operating its road and laying its track through sundry streets of that city, upon certain terms, conditions, and stipulations.

By the terms of such consent, such railroad track was to be constructed of the improved Philadelphia broad rail, six inches face, half-inch raised edge, the edge to be laid flush with the surface of the street, four feet ten inches apart between the raised edges, so as to accommodate the most common width of carriage wheels. The track was to be so laid as to permit the free passage of vehicles over the same, and the rails laid even with the surface of the street, and to conform to the grades thereof as they were then established, or should thereafter be established or altered. Provision was made for the keeping open of the streets, &c., during the laying of the track. The cars to be used on the railroad were to be drawn by horses or mules only, at a speed not exceeding seven miles per

hour, and to be run as the Common Council should prescribe. Numerous other provisions as to the operation of the road were attached to the consent of the Common Council.

Under this consent, which was accepted by the company, the Defendant was proceeding to construct its road, when the Plaintiff, on the 21st of October, 1862, commenced his action against the Defendant, in which he alleged that he was the owner of a lot on East avenue, extending to the centre of said street, upon which was situated his dwelling-house; that the Defendant was a corporation, organized under the railroad act, and was about to commence the construction of its road in said East Avenue, running along the centre of said street past his said premises; that the Defendant had taken no proceedings to acquire the title of the Plaintiff to any part of his premises, or to assess his damages, and that the Defendant claimed to construct its road in East avenue without obtaining his consent, or taking proceedings to acquire title; that the construction of said road, and said road after its completion, would, in his judgment, greatly impair his enjoyment of his said premises, and depreciate the value thereof.

The Defendant, in its answer, admitted the title of the Plaintiff to the premises in question, and that it was about to construct its railroad through East Avenue, but denied that it would impair or depreciate the value of the Plaintiff's premises. The answer then set forth the consent of the Common Council of the city of Rochester, before referred to, and that its road was to be constructed and operated in accordance with the provisions thereof.

The action came on for trial before Justice J. C. Smith, when the Plaintiff read the pleadings and rested his case. The Defendant put in evidence its articles of association, the map and profile of its route, the consent of the Common Council before referred to, its acceptance and adoption thereof, with the approval of the attorney of the city, as required thereby. Upon this testimony the case was submitted to the Court.

The Court, on the 2d of April, 1863, made its decision. The findings of the Court contain substantially the facts above stated,

that the Defendant formally accepted the consent of the said Common Council, subject to the conditions, provisions, and restrictions therein contained, and bound itself to keep and observe the same, under which it claims to construct its road, and not otherwise.

The Court decided that the construction by the Defendant of the railroad authorized and permitted by the resolution aforesaid (the consent of the Common Council) in the aforesaid street opposite the premises of the Plaintiff would be the imposition of an additional burden upon, and the taking of, the property of the Plaintiff, within the meaning of the constitutional provision, which forbids such taking without compensation, and that the Defendant derived no authority to do the acts aforesaid by the acts of the Legislature under which it is incorporated, or said resolution of the Common Council of said city, without the consent of the owners of the fee, or the appraisal and payment of his damages in the mode provided by law, and granted a perpetual injunction.

This judgment was afterward affirmed on appeal by the General Term of the Seventh Judicial District, from which decision this appeal is taken.

*W. F. Cogswell* for Appellant.
*T. R. Strong* for Respondent.

MILLER, J.—The Defendant in this action claims the right to construct a horse-railroad through the streets of the city of Rochester, by virtue of the consent of the Common Council of said city, without making any compensation for damages to the owners of lots along the street in which the road passes.  The claim thus urged is based upon the ground, that the building of such a railroad is not an infringement upon the rights, or any injury to the interests, of the owners of the land adjoining, and that it is only a mode of exercising the public right of passage, with which they have parted; and not such an additional or further appropriation as entitles them to pecuniary remuneration.

I am inclined to think that the question involved in this case

has been substantially adjudicated by this Court in several cases, and that the principle has been definitely settled, that such a use of the land imposes an additional burden upon the owner of the fee of the lands adjoining.   Such is, no doubt, the rule as to railroads operated by steam power.

In the old Supreme Court, in the case of The Trustees of the Presbyterian Society in Waterloo *v.* The Aub. & Roch. R. R. Co. (3 Hill, 567), the doctrine was laid down, that the laying out of a highway gives the public a mere right of passage, with the powers and privileges incident to such right; that the owner of the soil is not thereby divested of his title to the land, and that a railroad company was bound to make compensation for constructing its road across the highway.   (See also, Fletcher *v.* The Auburn & Syracuse R. R. Co., 25 Wend. 462.)   The same principle was again more distinctly asserted in Williams *v.* N. Y. C. R. R. Co. (16 N. Y. 97), and it was held that an appropriation of a highway by a railroad company is the imposition of an additional burden upon, and the taking of the property of the owner of the fee, within the meaning of the constitutional provision, which forbids such taking without compensation, and that the company can derive no title by an act of the Legislature, or of any municipal authority, without the consent of the owner of the fee, or without the appraisal and payment of damages, in the mode prescribed by law.

In the case last cited, an action was brought to recover damages for running cars upon the railroad, and to restrain the Defendant from enlarging upon and running over a public street in the city of Syracuse in front of the Plaintiff's premises, and it presented the distinct question, whether the dedication of land to the use of the public as a highway precludes the owner of the fee, subject to the easement, from maintaining an action against a railroad company, which without any consent, or the appraisal of damages, enters upon and occupies such highway with the track of the road; and it was decided that the action was maintainable.

The same principle here asserted has also been upheld by other adjudications of this Court.   In Davis *v.* The Mayor of New York

(14 N. Y. 506), which preceded the case of Williams *v.* N. Y. C. R. R. Co., the reasoning of the learned Judge who delivered the opinion sustains the same views which were enunciated in the latter case. The same doctrine is also upheld by several reported cases, since decided by this Court. (See Mahon *v.* The N. Y. C. R. R. Co., 24 N. Y. 658; Carpenter *v.* The Oswego & Syracuse R. R. Co., id. 655; Wager *v.* The Troy Union R. R. Co., 25 id. 526.)

These cases must be considered as settling the question beyond peradventure, and conclusively, that the occupation and use of a street by a railroad company, operated by steam, and in the ordinary manner in which such roads are constructed and carried on, is an appropriation of the highway for a new and distinct purpose, entirely foreign from its original object, and which entitles the owner to compensation. The position cannot be controverted. An attempted distinction is, however, sought to be made between railroads operated by steam, and those which are simply used by horses as a motive power, in the streets of populous cities; and it is contended that the rule laid down is entirely inapplicable to the latter class of railroads, which of late years have come into use, and which are increasing in numbers as the wants and necessities of large and populous communities demand more expeditious and more extended means for the transportation of passengers between the widely separated and distant portions of such communities.

The position thus taken is not entirely without authority to uphold it, and our attention has been called to several cases decided in the Supreme Court of this State, as well as to some decisions of the Courts in other States, which sustain the doctrine contended for by the Defendant's counsel. In another connection I shall have occasion to refer to the cases relied upon by the Defendant's counsel, and without examining them in the present stage of the discussion, will proceed to consider how far the cases decided by this Court affect the question now present.

The effect of the decisions which I have cited is fully considered in the able opinions of the General Term delivered upon the decision of the case now considered, and the principle enunciated by

them was there held to be applicable to street railroads, equally with those where steam is employed as the motive power.

Without discussing them at length, I shall deem it sufficient to refer briefly to the case of Wager v. The Troy Union R. R. Co. (supra), which had been but recently decided, and was not reported when this case was decided at General Term. In that case the former decisions are indorsed and reaffirmed, and the learned Judge who wrote the opinion refers to the distinction claimed to exist between railroads operated by steam and horse power in the following explicit terms: " With a single track, and particularly if the cars used upon it were propelled by horse power, the interruption of the public easement in the street might be very trifling, and of no practical consequence to the public at large. But this consideration cannot affect the question of right of property, or of the increase of burden upon the soil. It would present simply a question of *degree* in respect to the enlargement of the easement, and would not affect the principle, that the use of a street for the purpose of a railroad, imposed upon it, is a new burden."

If these views can be considered as embodying the opinion of the Court in the case last cited, then they are entirely decisive of the question presented, and must be considered as controlling, and render any further inquiry entirely needless. But, as the distinct point which we are now considering was not presented, it may be well to look at the question, upon principle, in the light of the decisions applicable to railroads propelled by steam, to which I have adverted.

The ground upon which these cases are decided is, that the use of the land for a railroad imposes an additional burden upon the owner of the fee. I am at a loss to see any apparent distinction in the application of the rule between cases where steam power is employed and those cases where the road is operated by horse power. It is true there is some difference in the manner in which the road is constructed, and in the speed with which the cars are propelled, at times; but there is precisely the same exclusive appropriation of the track for the purposes intended in each case,

to the absolute exclusion of all who may interfere with its mode of operation. The power to use the road for the conveyance of passengers is entirely with the company, and no person can interfere with that method of conveyance, or with the right of the company to enjoy its monopoly.

As was held in Hegan *v.* The Eighth Avenue R. R. Co. (15 N. Y. 380), the company has the exclusive right of the track while cars are passing, and all others must keep out of their way, and if a party is injured while they are proceeding at a reasonable and lawful speed an action cannot be maintained against the company for the injury. This privilege of laying and using the track in such a manner confers upon the company a right to the use and enjoyment of the track which precludes other vehicles while the operations of the company in the use of the track demand their exclusion. Such a right is, I think, inconsistent with the nature of the easement acquired by the public. In Williams *v.* The N. Y. C. R. R. C., Selden, J., after stating the distinction between the two uses to which the highway is applied by converting it into a railroad track, proceeds to argue, that by means thereof two easements are created, one vested in the public, which has been paid for, and the other in the company, and remarks: " These easements are property, and that of the railroad company is valuable. How was it acquired ? It has cost the company nothing. The theory must be that it is carved out and is a part of the public easement, and is therefore the gift of the public. This would do if it was given solely at the expense of the public. But it is manifest that it is at the joint expense of the public and the owner of the fee. Ought not the latter, then, to have been consulted? " There is much force, I think, in these suggestions, and it is difficult to see how they can be answered satisfactorily and according to any well-settled legal principle. If the reasoning of the learned Judge is correct, then the same rule is applicable to each class of railroads, the difference in the use being only in the degree. (25 N. Y. 533.)

The use of a railroad, no matter how it is operated, whether by horse or steam power, necessarily includes, to a certain extent, an

exclusive occupation of a portion of the highway for the track of the road, and the running of its cars by the company, and a permanent occupation of the soil. It requires that all parties shall stand aside, and make way for its progress. This is clearly inconsistent with the legal object and design of a highway, which is entirely open and free to all, for the purposes of locomotive travel and transportation. The enjoyment of the easement in a highway never confers an exclusive right upon any one who may have occasion to use it, while the laying down of rails, and the employment of cars, is to the detriment and exclusion of all others at the time when the cars are running, and a restraint upon a free, undisturbed, and general public use. It is an assertion of a right to the possession of the highway by the corporation, and an appropriation of it to private occupation, which, by lapse of time, might ripen into a right, and vest a title in the company.

Instead of being the exercise of a right of passage and repassage over a highway or a street, it cannot, I think, be denied, that it is sometimes an obstruction to travel, and an infringement upon the rights of the public and owners of land. In narrow streets, where the rails of the road border close upon the sidewalk, it not only interposes obstacles to the traveller, but inflicts injury upon the lot owner, by blocking up the way, and preventing a free access to the premises. The large and unwieldy vehicles which are used, which can only proceed upon a track laid for that purpose, with no capacity to turn out, so as to avoid or accommodate ordinary carriages, are often a source of annoyance and obstruction to the free passage of horses and carriages, for periods of greater or less duration, and are inconsistent with the use of an open and free passage of the highway.

I have examined the decisions of the Supreme Court of this State, which have been cited in support of the Defendant's theory. (33 Barb. 420; 35 id. 304; id. 373; 37 id. 35.) In none of them was the distinct question now considered presented and adjudicated, although some of the opinions maintain the distinction now asserted as existing between the two classes of railways. The cases referred to are also examined and criticised in the opin-

ion of the General Term in this case, upon the appeal from the order denying the motion to vacate the injunction (39 Barb. 494), and I do not deem it necessary to discuss the points of difference more at length. If, under any circumstances, either of them can be considered as deciding the question now before us, then, I think, they are in conflict with the decisions of this Court, as well as sound principles, and must be disregarded.

In The People *v.* Kerr, one of the cases cited, which was subsequently carried to the Court of Appeals, and is reported in 27 N. Y. 188, the decision was put upon the ground that the fee of the street, as against the Plaintiffs, was held by the corporation of New York City, and that the plaintiffs, other than the people, had no property in the land forming the bed of the street in front of their respective premises, to be protected by the constitutional limitation upon the right of eminent domain.

The decisions of the Courts of other States, to which our attention has been directed, even if applicable, can have no weight in overthrowing the adjudications of our own Courts, and do not, therefore, require examination.

The principle decided in Benedict *v.* Goit (3 Barb. 459; and approved in 14 N. Y. 516), that a highway does not cease to be such, for general purposes, by being converted into a turnpike or plank-road, which has been invoked, does not aid the Defendant. In the latter case, the general right of the public to use the road remains unimpaired. The change effected is, that the general public, in consideration of the payment of certain tolls, is relieved from the burden of keeping it in repair. Every citizen has the same right to travel over the turnpike or plank-road in his own conveyance, and the material used in making the latter is a mere improvement of the road, for the benefit of the whole public, without a special appropriation of any part or portion to the use of a particular class of carriages owned by the company, to the exclusion of others who may desire to use that portion at the same time, and, as must be conceded, at times to the obstruction and hindrance of persons who may be travelling, if not to those whose lands are located on the line of the road.

The considerations suggested cover all the points urged, which are material in the disposition of this case, and inevitably lead to affirmance of the judgment of the Supreme Court.

Judgment affirmed, with costs.