## *In re* CITY OF BUFFALO.

### *In re* TERRACE.

*(Superior Court of Buffalo, Special Term.　June 1, 1891.)*

TAKING FEE OF STREET—COMPENSATION.

> When the fee of land within the limits of a street is taken by the city, the abutting owners are not limited to nominal damages, but compensation should be based on the effect a deprivation of the fee will have on the value of abutting property.

Motion by the corporation counsel of the city of Buffalo to confirm a report of commissioners fixing compensation to be paid by the city for taking the fee of land within the boundaries of The Terrace and Washington streets, in that city. See 15 N. Y. Supp. 123.

*William F. Mackey*, for plaintiff. *Franklin D. Locke* and *Frank Ferguson*, for defendants.

BECKWITH, J. This is a proceeding instituted by the city to take the fee of the lands within the boundaries of the street called "The Terrace" and a portion of Washington street. The commissioners heretofore appointed "to ascertain and report the just compensation to be made to the owners" of the

lands to be taken have filed their report. The corporation counsel now moves the confirmation of the report, which is opposed by lot-owners. Mr. Locke, of counsel for Mr. Pratt, who is the owner of premises fronting 215 feet on The Terrace, opposes the confirmation upon the ground, among other objections, that a just compensation has not been awarded him by the commissioners. The court does not assume to supervise the judgment and conclusions reached by the commissioners as to values, but, if it appear that the commissioners adopted or were influenced by an erroneous principle of appraisement, the court may send the report back for further consideration. It is conceded by the counsel for the respective parties that Mr. Pratt is the owner of the fee to the center line of The Terrace, and in making my decision I have assumed that fact to be indisputable. The commissioners have awarded six cents as a just compensation to Mr. Pratt for taking away from him the ownership of the fee to the center line of The Terrace. The commissioners report that, "after carefully considering the law bearing upon the matter of taking the fee of land long occupied and used as public streets in a municipality, they find the question not free from doubt and difficulty, but reach the conclusion that, with a just regard to the rights of all, the sum of six cents should be awarded to each of the owners." The commissioners have evidently adopted a doctrine which has been too extensively entertained to be treated indifferently; namely, that when public authorities lay out and open a highway over a strip of land which has been dedicated for street purposes by the original owner, or which has been used a great many years by the public as a highway, the abutting lot-owners are entitled to nominal damages only. That is now the contention on the part of the city, and it is urged on the court as containing the correct rule. A great many cases decided in this and other states have been cited which it is claimed support the rule of nominal damages. It will be found upon examination, I think, that the rule that nominal damages are a sufficient and proper award to the owner originated and has had its usual and appropriate application in those cases in which a city or other public authorities have in the ordinary manner simply laid out and opened a street or highway over a piece of land previously offered by the owner in the way of dedication for public use. In such cases it might well be held that nominal damages are a sufficient allowance, for, when the public authorities accept and open for travel the proffered highway, they only do what the donor requested, and those persons who purchase lots bounded on such contemplated highway do so, recognizing the anticipated public easement, and in such cases only an easement is taken. But ownership of the fee by the public is not essential to a highway nor any way material to the public easement. I cannot avoid the conclusion that the man who owns the fee of the land in front of his premises to the middle line of the street is the owner of property of more than nominal value. It is of value to him, and may be of great value, as a protection and security against encroachments, which assume at the present day many unexpected forms, and necessarily interfere with his enjoyment of privileges which belong to him as the owner of land fronting on a street. This is the more apparent, in view of certain rules of law which have been definitely settled by the courts in recent times. For instance, and only in the way of illustration, it has been settled that a railroad cannot be laid upon a street where the fee belongs to abutting lot-owners without making the owners compensation. *Williams* v. *Railroad Co.*, 16 N. Y. 97; *Craig* v. *Railroad Co.*, 39 N. Y. 404. And it has been quite as firmly established that, if the fee is not in the adjoining lot-owner, he sustains no legal injury from the construction at grade, with legislative consent, of a railway in the street in front of his premises. *Fobes* v. *Railroad Co.*, 121 N. Y. 505, 24 N. E. Rep. 919. If the owner of land fronting upon a street does not own also the fee of the street, he finds himself in this precarious situation, that encroachments and obstructions may, with leg-

islative authority, be placed upon the front of his premises, which will greatly diminish the value of his property, but against which the law affords him no remedy. Without the fee, under some circumstances, railroad tracks could be laid close to the curb-line, interrupting constantly his access to his premises, and, though public traffic required a train every 20 minutes, he would be remediless. The right of action which the owner would have for an abuse of the railroad franchise, as by standing cars in front of the owner's premises, is an entirely different matter. Railroad tracks only illustrate, for it is impossible to conceive of all the demands invention and science will hereafter make upon the public streets upon the pretense of a public benefit or for the sake of the public convenience. Improvements may be encouraged, but it is a principle of justice that private property cannot be taken for public use without compensation. When the courts determine, as they have, that, if a lot-owner also owns the fee of the street, railroads and other additional burdens beyond those for ordinary street purposes cannot be put upon his front without making him compensation, I must assume that it is meant that compensation must be made equal to the diminution in value of the owner's land; and it was a fruitless labor the courts carried on in trying to determine exactly what are the rights of the owner of the fee of a street if the result is a conclusion of law that he is entitled to the nominal sum of six cents. It is argued, in this case, that the city only proposes to take the fee for street purposes, and that it cannot be assumed, or permitted to be proved, that the city will ever suffer any extraordinary burden to be put upon the street. Admit those things to be so, yet it is not towards the intentions of the city we must look, but it is the situation of the private land-owner that must be taken into view. It is the fee that affords protection to the lot-owner against legislative encroachments. It is true that the abutting lot-owner may never be injured by legislative sanctions of extraordinary uses of the street, nevertheless the security in the convenient use of the property which arises from the protection of the fee is something of value. If the fee keeps off extraordinary uses and burdens from the street, and protects the owner from interferences with the convenient use of his property in connection with the street, then the fee, as it seems to me, is of substantial value.

It is useless to extend the discussion, or to review the authorities and decided cases. In some respects, what are the rights of the public and what the rights of abutting owners in the streets of our cities seem to be imperfectly determined. We deduce, however, from the two well-established doctrines or rules which have been mentioned respecting the effect of ownership of the fee, the conclusion that it cannot be taken to be a rule of law, as the commissioners seem to have assumed, that, when the fee of land within the limits of a street is taken by the city, the owner is entitled only to nominal damages. The commissioners should ascertain it as a fact what a just compensation would be, regard being had to the effect of a deprivation of the fee upon the value of the owner's property. Entertaining those views of the subject, the court is unable to confirm the report. The matter must be referred back to the commissioners for further consideration.

Counsel opposing the confirmation of the report make the further objection that, the charter under which the proceedings were instituted having been repealed, this proceeding can go no further, but must fall; citing *Nash* v. *Bank*, 105 N. Y. 243, 11 N. E. Rep. 946. In that case the cause of action for a penalty had its origin in the statute, and depended upon the statute which was repealed. The power of eminent domain is absolute in the people, and always exists, and statutes are but legislative directions as to the mode and conditions of its exercise. The power was delegated to the city of Buffalo to take lands for streets and the fee of existing streets. The charter gives the conditions upon which the power may be exercised and the procedure. This proceeding was begun under the charter lately repealed, and juris-

diction obtained by an observance of the preliminary conditions prescribed in that charter. The proceeding was carried on down to the making of their report by the commissioners. Then the former charter was repealed, and a new charter given, to come into operation in January, 1892, except certain chapters or titles and sections which were to take effect immediately, one of which was the title relating to eminent domain. There is no difficulty in applying the provisions of the new charter to the further steps required for completing this proceeding. There is, perhaps, some conflict of authorities upon the subject whether proceedings commenced under a charter which is subsequently repealed may be continued to completion under the new charter. The provisions of both charters, except, possibly, conditions attached to the initiation of the proceedings, being mere procedure, the right of eminent domain being absolute, I see no reason why this proceeding may not be completed under the provisions of the new charter, and whether, upon this application, the directions of the new charter have been complied with is not material now, since the report must be sent back to the commissioners upon the grounds first considered. Let the order be prepared, and submitted for the approval of the court.