(5 Misc. Rep. 59.)

## McCRUDEN v. ROCHESTER RY. CO.

(Circuit Court, Monroe County. June, 1893.)

1. STREETS—OWNERSHIP OF FEE—PRESUMPTION.
    Where it is shown that city lots conveyed by numbers abutted on a street, it will be presumed that the grantee took title to the center of the street.

2. STREET RAILROADS—COMPENSATION TO ABUTTING OWNERS.
    Const. 1874, art. 3, § 18, providing that no law shall be passed authorizing the construction of a street railroad except with the consent of property owners, or, if that could not be obtained, by direction of the supreme court, does not affect the rule that a street railroad is an additional burden on the street, for which abutting owners must be compensated, if they own to the fee of the street.

3 SAME—RIGHT OF WAY—LOCATION OF GRANT.
    Where a grant to a street-railroad company, by abutting owners, of a right of way, does not prescribe the location, the laying of the tracks is a practical location of the grant, and it cannot afterwards be changed without the consent of the grantors.

4. TRESPASS—CUTTING TREES—DAMAGES.
    In an action for cutting down trees on plaintiff's land, plaintiff may recover, where defendant carried away such trees, the value thereof, in addition to the value of the land before and after the injury.

5. SAME—TREBLE DAMAGES.
    Code Civil Proc. §§ 1667, 1668, which provide that, if any person cuts down or carries off any tree on the land of another, the owner may have judgment for treble the amount of "damages" awarded him therefor by the jury, change the provision of Rev. Laws 1813, p. 524, allowing treble damages only for the value of the wood cut or carried off, and authorize the recovery of treble the amount of damages sustained by the trespass. Van Deusen v. Young, 29 N. Y. 9, explained.

Action by McCruden against the Rochester Railway Company for trespass. There was a verdict for plaintiff at the circuit, and defendant moves for a new trial. Denied.

Thomas Raines, for plaintiff.
C. J. Bissell, for defendant.

RUMSEY, J. The plaintiff was the owner of a lot situated on Plymouth avenue, in the city of Rochester, along which the defendant's grantor had constructed a horse railroad in the center of the street. ·After acquiring the franchise to use and operate a street railroad which belonged to its grantor, another corporation, the defendant constructed its road on the side of the street between the curb and the sidewalk in front of the plaintiff's premises. The plaintiff, many years before, had caused to be set out in front of her premises, and between the sidewalk and the curb, some shade trees. For part of the distance along the street, two rows of trees had been set out by her, and for the remainder of the way, in front of her premises, there had been put only one row. The defendant, in constructing its road on the side of the street, cut down certain of these trees, and, for the damages which

she suffered by reason of the cutting down and carrying away of the trees, the plaintiff brought this action, in which she claimed to recover treble damages under the statute upon that subject. At the circuit she had a verdict for $450. The defendant now moves for a new trial, and the plaintiff moves for treble damages under the statute.

The defendant's motion for a new trial is based upon certain exceptions to a refusal to nonsuit, and to the admission of evidence upon the question of damages. The motion for a nonsuit was based upon two grounds: The first, that there was no evidence that the plaintiff was the owner of the land upon which the trees stood at the time they were cut. In the deed to the plaintiff, her land was described as certain lots situated in the city of Rochester, and the land was designated simply by the numbers of the lots. It appeared by the testimony that the lots of the plaintiff abutted upon Plymouth avenue. When that appeared, the presumption of law was that the plaintiff took title to the center of the street. Hennessy v. Murdock, 137 N. Y. 317, 33 N. E. Rep. 330. That presumption was sufficient to establish the title of the plaintiff to this land, and she, being the owner of the land, was the owner of the trees which stood in front of it, and upon her side of the street. Village of Lancaster v. Richardson, 4 Lans. 136.

The next point made by the defendant is that, the defendant having received permission from the common council of Rochester to locate its tracks where it did, and the tracks having been located by direction of the executive board, it had the right to occupy the street in front of the plaintiff's premises and lay its tracks there without compensation to the owner of the fee. It is conceded by the defendant that before 1874 a construction of a street railway was an additional burden upon the highway, for which the abutting owner was entitled to be compensated if he was at the same time the owner of the fee of the street. Craig v. Railroad Co., 39 N. Y. 404. Although that case was decided by a divided court, it was simply an application of principles which had long been thoroughly settled in this state, and as such it has been invariably approved whenever it has been cited. It has now become a rule of property which no court would venture to overthrow. Fobes v. Railroad Co., 121 N. Y. 505, 515, 24 N. E. Rep. 919. The amendment to the constitution in 1874 did not at all affect the rule laid down in the Craig Case, 39 N. Y. 404. The legislature always had power to authorize the construction of street railways in any city. This they could do without compensation to the abutting owners, if the fee of the street was in the city, while such owners were entitled to compensation if they had the fee. The legislature could give this permission by general or local acts, as it saw fit. The amendment to the constitution (article 3, § 18) forbade the legislature to grant by private or local act, to any corporation, the right to lay down railroad

tracks. The section then proceeded to require that the legislature should pass general laws for the acquisition of such rights; but it put upon that power of the legislature a limitation which had not previously existed, and that was that no law should be passed to authorize the construction of a street railroad except with the consent of property owners, or, if that consent could not be obtained, by direction of the supreme court. There is nothing in the amendment from which it can be inferred that the rights of property owners were in the slightest degree infringed or diminished. On the contrary, the express object of the amendment was to give them additional protection against the acts of the legislature. The right of an individual to compensation, when an additional burden is put upon his property for public purposes, is well established and secured, and no change of the organic law should be construed to affect such a right, unless it is plainly expressed or necessarily to be inferred from the language of the constitution. That is not the case here. This amendment has all the effect that can be claimed for it when it is construed to give to property owners a limited right to control the construction of a street railway in front of their premises. Since 1874 there have been very many cases in which the construction of street railroads in front of private property has been enjoined at the suit of persons who owned the fee of the highway. In none of these cases has it ever been suggested that the amendment of 1874 took away their rights to compensation. That, of itself, is strong evidence that no such construction should be given to it. I am quite clear that the case of Craig v. Railroad Co., 39 N. Y. 404, is still the law of the state.

The next point of the defendant is that, the plaintiff having granted a right of way to the Rochester City & Brighton Railroad Company in front of this land, for the purpose of constructing and operating a horse railroad, such grant inured to the benefit of the defendant as the grantee of the former corporation, and authorized it to relocate its road upon the side of the street. It appears that this right of way was conveyed by the plaintiff to the defendant's grantor in 1887. No particular place is stated in the grant where the railroad to be operated shall be constructed. The evidence shows that, after the grant was made, a horse railroad was laid down by the grantee in the middle of the street, and that such was the condition of affairs up to the time that the defendant undertook to change the location of the track from the middle to the side of the street in front of the plaintiff's premises. In the case of Eldridge v. Railroad Co., (decided at the Monroe special term, December, 1887; affirmed, 54 Hun, 194, 7 N. Y. Supp. 439,) the same state of facts was presented. The court there held that, the grantee having laid its track in pursuance of the grant of right of way, there was a practical location of the grant, which could not be changed subsequently by the grantee without the consent of the grantor. The defendant in that case

was restrained from relaying its track upon the side of the street towards the plaintiff's premises, after it had once built the track in the center of the street. The court at special term said this:

"The 'grant,' so called, of a right of way, was also intended as the consent of the property owners, which the defendant was required to procure before it laid the track. It operated to give a right of way along Court street. That right of way was not identified and marked out by the deed. If it had been, of course no other line than the one described in the deed could be used. But a right of way may be located by the acts of the parties in such a way as to be fixed and unchangeable, although the deed is silent as to the precise location. When a right of way has once been exercised in a fixed and definite course with the acquiescence of both parties, it cannot be changed at the pleasure of the grantee. Onthank v. Railroad Co., 71 N. Y. 194; Decatur v. Walker, 157 Mass. 141. In this case the grant was made that the defendant might locate its track along Court street. It did that in the year 1884. In so doing it fixed and located its right of way along Court street as it desired. I do not think that, having done so, it can change the location, and occupy more of the street than is included within the limits of the right then selected and thus fixed. The fact that a necessity has arisen for a new location, which did not exist when the selection was first made, does not affect the right. Chadler v. Aqueduct Co., 125 Mass. 544; Jennison v. Walker, 11 Gray, 423."

That case disposes of the claim here made by the defendant.

The next point made by the defendant is that the court erred in evidence which it admitted to prove damages. It might be sufficient to say upon that point that the question was not raised by any exception taken upon the trial. The law is now well settled that the measure of the damages for the cutting of trees upon the premises of a plaintiff is the difference in the value of the land before and after the injury. • Dwight v. Railroad Co., 132 N. Y. 199, 30 N. E. Rep. 398. It will be seen by a reference to the charge that the jury were told that such was the measure of damages in this case, and they were confined to that measure of damages. For that reason the admission of the evidence to show the value of the wood after it had been cut did no harm to the defendant. It is fair to say that the charge, as made, was an oversight on the part of the court, and that the jury would have been told, if requested by the plaintiff, that she was entitled to recover not only the difference in the value of the land caused by the cutting of the trees, but also the value of the timber which was taken away, if it had any. The timber undoubtedly belonged to the plaintiff, as we have seen above. When it was cut down, even if it had been left upon the ground, the damage to the freehold would have been complete, and the defendant would have been liable for all those damages. But the timber lying there would still be the timber of the plaintiff. If some other person had taken it away, no doubt such person would be liable to the plaintiff for its value. I can see no good reason why the defendant should be relieved from such liability because it committed what may be called a "double trespass," and took away the wood after it had injured the freehold by cutting down the trees. I can find no case which limits the right of the plaintiff to damages for both kinds of injury. On the contrary, when

it is conceded, as it must be, that the trees belonged to her, it necessarily follows, as it seems to me, that they were still hers, although illegally cut down, and she was entitled to recover their value if the defendant took them away. These considerations dispose of the motion for a new trial, and require that it should· be denied.

The plaintiff moves, under the statute, for treble damages. The jury, by their verdict, negatived the claim of the defendant that it had probable cause to believe that it had the right to cut the trees. The question thus comes, whether or not the plaintiff is entitled to treble damages under the reading of the statute. The law provides that if any person · cuts down or carries off any tree on the land of another, without the owner's leave, an action may be maintained against him by the owner. Code Civil Proc. § 1667. It further provides that in such an action the plaintiff may state in his complaint the amount of his damages, and demand judgment for treble the sum so stated, and that thereupon, if the verdict awards him any damages, he is entitled to judgment for treble the sum so awarded. Id. § 1668. It is quite clear that the case is precisely within the letter of those two sections of the Code. In the absence of authority to the contrary, it would necessarily be held that the damages to be trebled were the damages which the jury had a right to award. What those damages should be are to be ascertained, in any case, by learning what the measure of damages is, and awarding them according to that measure. So that, if the measure of damages is the depreciation in value of the freehold, those damages necessarily must be trebled within the wording of the statute. But the defendant claims that the statute, as it now reads, should be construed as the original statute, which was a portion of the Revised Laws. As originally passed, the law was that any person who should cut or carry off any wood, without permission of the owner, should pay to the owner of the land treble the value of the wood so cut or carried off. 1 Rev. Laws 1813, p. 524. Under this law it was quite clear that the damages to be trebled were simply the value of the wood, and so it was held. Newcomb v. Butterfield, 8 Johns. 264. That case was decided in 1811. By the Revised Statutes, however, of 1830, the wording of the law was considerably changed. That statute provided that every person who should cut down or carry off any trees on the land of any other person, without leave of the owner thereof, should forfeit and pay to the owner of such land treble the amount of the damages which should be assessed therefor in an action of trespass. 2 Rev. St. p. 338, § 1. It is very clear that this section changed the wording of the former statute quite materially, and, in the absence of any authority to the contrary, it would undoubtedly be held that the change in the wording of the statute gave the plaintiff in actions of trespass, after that time, the right to treble all the damages which he might recover in the action of trespass, instead of merely the value of the wood carried away. Such was the opinion of Davies,

J., in Van Deusen v. Young, 29 N. Y. 9, 24.    Judge Davies, in that case, said that under the former statute it had been held that the measure of damages was treble the value of the timber cut and carried away; but he says that this rule was altered in the revision of 1830, by which the offender was to forfeit and pay to the owner of the land treble the amount of the damages assessed for the trespass.    It is claimed by the defendant that the case just cited is an authority for his contention that, although the words of the statute have been changed, its meaning has not been affected.    An examination of that case, however, will show that no such question was in the case.    The plaintiff there had brought an action against the defendant for cutting trees upon land of which the plaintiff was the owner of an estate in fee in remainder.    It appeared upon the trial that the defendant was in possession by permission of the life tenant.    The referee found that the plaintiff was entitled to treble damages for the trees which were cut by the defendant while he was so in possession. The judgment entered upon the report of the referee was reversed, but the grounds of the reversal were that incompetent evidence had been received, and that the plaintiff was not entitled to treble damages.    So far as can be ascertained from the opinions, (in which, as it would seem from the report, the court as a whole did not concur,) the last proposition was put upon the ground that the defendant was not a trespasser, because he was lawfully in possession of the land, and for that reason the action of trespass would not lie against him.    That is shown by the opinion of Judge Mullin, at pages 33 and 34.    It is true that Judge Mullin does, in the latter part of his opinion, speak of the meaning of the word "damages" in that section of the Revised Statutes which gives the plaintiff treble damages against the trespasser.    He says that the word is equivalent to the words "value of the wood" in the former law, and cites, as establishing that proposition, the case of King v. Haven, 25 Wend. 420.    But an examination of that case will show, not only that no such thing is decided, but that the damages recovered by the plaintiff there, and which were trebled, were just such damages as were recovered here.    In that case the defendant had cut down six elm trees in the front of the plaintiff's lot.    The plaintiff claimed damages for the value of the trees, and for a substantial diminution of the value of his lot, and under that claim he recovered a certain sum, which the supreme court held should be trebled.    The court there did not say that the Revised Statutes were not different from the old law with regard to what were to be considered as damages to be trebled.    What the court do say is this:

"Treble damages are the legal consequences of the finding as certainly as a judgment is a consequence of a verdict. The Revised Statutes do not essentially differ, in this respect, from the old law."

It will be seen that the court does not say that the word "damages" in the new law is equivalent to the words "value of the wood" in the old law, or anything like it, but it recognizes the

fact that the verbiage of the statute has been materially changed, and the meaning of the statute has altered with it. Returning, again, to the case of Van Deusen v. Young, 29 N. Y. 9, 24, it will be seen that Judge Mullin's opinion on this point was not concurred in by anybody, and it was not the point on which the case turned. For this reason it cannot be regarded as an authority upon the proposition for which it is cited. It is quite true that, where there has been a slight change of the wording of a statute in a revision, it will not be deemed to alter the construction. But this rule does not apply to grave and material changes. It is only to be invoked when the changes are immaterial, and made simply to improve the grammatical construction of the law, or to bring it more exactly within the cases which have interpreted it. It certainly could not be applied where so serious a change was made in the law as was done in 1830 by the revision of the law of 1813. I am clearly of the opinion that the plaintiff in this case is entitled to treble damages under the provisions of the Code, and her motion is therefore granted. The defendant's motion for a new trial is denied, with $10 costs, and the plaintiff's motion for treble damages granted, without costs. Ordered accordingly.