the plaintiff when there were any to supply it with. The disputed questions of fact upon the subject of distribution of cars and of inequality of facilities, in view of the circumstances which the evidence tends to prove existed, must be deemed disposed of by the findings of the referee. The fact that the plaintiff had a large quantity of lumber remaining piled in the woods at the close of the year 1887 does not necessarily require the conclusion that it had been denied the facilities to which it was entitled. The question is raised as to the right of the plaintiff to place within the operation of the contract, in respect to facilities, the timber upon the lands purchased by Mr. Bullis (who was the president of the plaintiff) of Healy & Son, about three months prior to the time the defendants were relieved from the obligation of their covenants in the contract with the plaintiff. And it is urged that the denial of such rights by the defendants was in violation of that to which the plaintiff was entitled. This view is not supported. The contracts to which the defendants were parties had reference to the lands from which it was contemplated by their provisions the bark and timber would be taken, and to extend the facilities to other land and proportionally to the increase of the plaintiff's lumber business, so occasioned, would evidently take the operation of the contract beyond the purposes in view, and to the unanticipated prejudice of the defendants as well as Hazelton. It is unnecessary to consider the further suggestion whether the plaintiff had such relation to the Healy lands (the legal title to which was in Bullis) as to enable it to assert such right. The contract between the plaintiff and defendants provided that "the cost and expenses of operating and maintaining the railroad should be borne by the defendants, plaintiff and Hazelton *pro rata* in proportion to the number of carloads shipped over it by each." The plaintiff contends that the account of such cost and expense as rendered was unfair, to its prejudice; and that having from time to time been required to make payments in the proportion as charged, the plaintiff seeks reimbursement of the alleged excess so paid, over the amount with which it was justly chargeable. This claim of overpayment is based mainly upon the grounds: (1) That many of the cars furnished to the plaintiff were of less capacity than those had by the other parties, and no discrimination was made on that account; and (2) that many carloads of logs handled by Hazelton were not included in the statement upon which division of expenses was made. The referee was, upon the evidence, permitted to find that there was no substantial support for the complaint founded upon the first proposition. It appears that the plaintiff shipped substantially no lumber until the year 1886; that prior to that time cars were employed on its part mainly in hauling logs. For that purpose flat cars were necessarily used; the larger or gondola cars could not conveniently be employed for the purpose. They were the kind of cars suitable for the shipment of the defendants' bark. And there is evidence tending to prove that the capacity as indicated by the label on the cars did not necessarily control in regard to the loads placed upon them. As to the charge that carloads of logs taken by Hazelton to his mill were not included in the statements upon which expenses were apportioned, it may be said that his mill was located on the railroad between the place where his logs were skidded and Bradford; that he owned the log cars used by him, and they were by the engine pushed from the mill up to the place where loaded and dropped down to the mill by gravity without aid of the engine, and that the lumber manu-

factured from the logs was put on cars and drawn by the engine to Bradford. The removal of his logs to his mill was not specifically included in the account, but the trips of cars loaded with lumber manufactured from them to Bradford were treated in the statement of the account as those with which he was chargeable as between him and the other parties. The distance from his mill to the place where his logs were skidded was short, from one to three miles, and a few minutes only were occupied in shoving the cars up to them on each occasion. This was done once a day most of the time and sometimes twice a day. In May or June, 1887, Hazelton obtained an engine of his own, which was thereafter used upon his log cars and in switching about his mill. And it further appears that with a view to the payment monthly of the expenses of operating the road, statements were made, and they furnished the means by which the proportions chargeable to the plaintiff, defendants and Hazelton respectively, were obtained and the basis upon which the monthly payments were made. There is evidence tending to prove that in the summer of 1885 the representative of the plaintiff in the business charged that Hazelton was moving cars not included in the monthly statements; thereupon he was invited to and did investigate the matter, and heard the explanation of Hazelton with which he expressed himself as satisfied. The view taken by Hazelton of the manner of making up and presenting his use of the road in the monthly statements made for the purpose of distribution of the burden of its operating expense may not upon the evidence be deemed unreasonable. These facts, which the evidence tended to prove, may properly have had some bearing upon the disposition made by the referee of the plaintiff's alleged claim for denial of facilities to which it was entitled in the business, as well as upon the question whether or not it had paid more than its proportional share of the expenses chargeable to all the parties. Without expressing further reference to the evidence or amplifying reasons upon the subject, we think the referee was reasonably permitted as he did to reach the conclusion that the latter claim of the plaintiff was not supported by the evidence. No consideration is given to the release of the plaintiff to the defendants, of date December 29, 1887, which became operative in January following, as the construction and effect given to it by the referee are deemed conclusive upon this review. In the rulings upon the trial there was no error to the prejudice of the plaintiff. And as viewed here none of the exceptions to the findings as made by the referee or to his refusals to find as requested were well taken. The judgment should be affirmed. All concurred.

Hampden Hyde, as Executor, etc., of D. Cameron Hyde, Deceased, Appellant, v. Margaret S. Houston, Respondent, Impleaded, etc.— Judgment appealed from affirmed, with costs, on the opinion of Bradley, J., at Special Term. Bradley, J., not sitting.

John J. Smith, Respondent, v. Nathan J. Milliken and Charles F. Milliken, Appellants.— Interlocutory judgment appealed from affirmed, with costs, with leave to the defendants to withdraw demurrer and answer over within twenty days, on payment of the costs of this appeal and of the demurrer.

Arthur H. Allen and Mary J. Allen, Respondents, v. Lydia C. Davis and Others, Respondents, and Edmund C. Whitney, Appellant.— Order appealed from affirmed, with ten dollars costs and disbursements, on opinion of Green, J., at Special Term.

Bridget McCruden, Respondent, v. Rochester Railway Company, Appellant.— Judgment and order appealed from affirmed, on opinion of Rumsey, J., at the Circuit.

77 609
151a 623
77h (d)609
53ad397

77h 609
Case 4
170 NY 307